**Robert Eddie Louis JACKSON, Petitioner-Appellant,**

v.

**Dr. George J. BETO, Director, Texas Department of Corrections, Respondent-Appellee.**

No. 29053.

United States Court of Appeals, Fifth Circuit.

July 6, 1970.

Rehearing Denied Aug. 12, 1970.

---

E. H. Brown, Sam R. Wilson, Houston, Tex., for petitioner-appellant.

Charles Parrett, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before BELL, COLEMAN, and AINSWORTH, Circuit Judges.

COLEMAN, Circuit Judge:

This habeas corpus appeal is concerned with the efforts of the State of Texas, hitherto unsuccessful, to enforce its penalty against Robert Eddie Louis Jackson upon his conviction of a particularly heinous murder. The District Court denied habeas relief and we affirm.

The record, Jackson v. State, Tex.Cr. App., 403 S.W.2d 145, shows that on January 25, 1964, now over six years ago, Jackson shot and killed Mathew Bowie and his wife, Mrs. Preatha Bowie. The motive was robbery. Mr. Bowie had recently sold a large number of livestock. Mrs. Bowie was shot six times, and it was for her murder that Jackson was tried, convicted, and sentenced to death. The record also shows that while fleeing from pursuing officers Jackson wrecked his car and killed yet a third person.

Upon the original conviction, the Supreme Court denied certiorari, 385 U.S. 938, 87 S.Ct. 301, 17 L.Ed.2d 217 (1966).

Jackson then began habeas corpus proceedings, raising issues not involved in the present appeal. The case ultimately came here and we affirmed the denial of relief, 388 F.2d 409 (1968) [Judges Brown, Hutcheson, and Wisdom]. Jackson again sought review by certiorari.

Six months later, the Supreme Court decided Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

That Court subsequently vacated the judgment of this Court and remanded Jackson's case for reconsideration in the light of *Witherspoon,* Jackson v. Beto, 1968, 392 U.S. 649, 88 S.Ct. 2290, 20 L.Ed.2d 1350.

The petitioner, represented by counsel, then received a plenary hearing in both the State trial court and in the United States District Court. Both Courts found and held that the selection of Jackson's trial jury had not contravened *Witherspoon* standards. The case is now before us on this issue which is, of course, primarily one of fact. Impermissible standards either were or were not utilized in the exclusion of jurors for cause.

The standards required in the exclusion of veniremen for cause on the death penalty issue are quite plain. See Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221. A sentence of death cannot be carried out if the jury that recommended it was chosen by excluding veniremen for cause simply because they voiced *general objections* (emphasis ours) to the death penalty or expressed conscientious or religious scruples against its infliction. The State is free only to demand that the venireman be willing to consider all lawful penalties and that he not be irrevocably com-

mitted, before the trial has begun, to vote against the death penalty regardless of the facts and circumstances which may develop from the witness stand.

We now return to the issue of whether veniremen were impermissibly excluded for cause. Two hundred veniremen were summoned for prospective duty. Twenty three veniremen were excluded because of their scruples against the death penalty. The stenographic record of their voir dire examination cannot be found. The record is silent as to who was responsible for misplacing it, but petitioner-appellant does not charge that it occurred through wilful fault of the State. There being no stenographic record, petitioner attempted to reconstruct that which actually occurred by taking the testimony of as many as possible of the excluded veniremen. The result of this effort was as follows:

Two veniremen were dead.

Two were not available.

Two (Forse and Porterfield) did not recall being asked if they could conceive of any fact, situation, or circumstance in which they could vote for the death penalty.

One venireman said he was asked no questions at all.

One recalled his response that he could not conceive of any situation in which he could vote a death penalty.

Thirteen testified that the question was not asked or they could not remember it being asked.

Only two veniremen, Kelly and Inmon, testified that they were asked about an irrevocable commitment against the death penalty, that they replied they had none, but were nevertheless excluded for cause. In the final analysis, only two of twenty three excluded veniremen testified to clear non-compliance with *Witherspoon* standards.

In the plenary hearing held by the United States District Judge on September 12, 1969, the County Prosecutor testified that in qualifying the jury for cause "most of the time they [the veniremen] were asked the question as to whether or not they could, under any circumstances, any statement of facts, give the death penalty", that he personally asked this question of the veniremen he examined, and that if he omitted the question, the trial judge would ask it —that he [the judge] "was very close on the question".

·The state trial judge, Honorable Oneal Bacon, testified that he presided over the trial of Robert Eddie Louis Jackson. He testified:

"Generally, if the District Attorney or the County Attorney, who was questioning this particular juror, if he didn't go further than that [inquiring as to conscientious scruples] then the Court did. I asked him further questions".

Judge Bacon said that the further question was:

"Can you conceive of any facts or circumstances so brutal that you could vote for the death penalty in a proper case?"

Judge Bacon further testified that he had presided over a number of capital cases, that his concern was not to "excuse a juror simply because he stated he had a conscientious scruple", that no venireman was excused unless he stated unambiguously that he could not vote for the death penalty under any set of facts or circumstances.

On November 12, 1969, the United States District Court filed its memorandum opinion, findings of fact, and conclusions of law.

He found as facts:

### (6)

"Each prospective juror was asked two questions. (1) If he had any conscientious scruples against the death penalty; and (2) If he could conceive of any facts so horrible that he could vote for death.

(7)

"The second question was asked only when the juror answered the first question in the affirmative.

(9)

"No juror was excused without being asked the 'second' question."

It was concluded, therefore, that *Witherspoon* was of no help to Jackson.

Measured by the standards repeatedly enunciated by this Court, the findings were not clearly erroneous. They are supported by substantial evidence. We are not left with an abiding conviction that a mistake has been made or an injustice committed.

Compliance with *Witherspoon* is the sole issue on this appeal.

We affirm the judgment of the District Court.

Affirmed.