**S. Lamont SMITH, Warden, Georgia State Prison, Reidsville, Georgia, Respondent-Appellant,**

v.

**Woodrow WHISMAN, Petitioner-Appellee.**

No. 28194.

United States Court of Appeals, Fifth Circuit.

Sept. 16, 1970.

---

Arthur K. Bolton, Atty. Gen. of Ga., Harold N. Hill, Jr., Executive Asst. Atty. Gen., Marion O. Gordon, Courtney Wilder Stanton, Asst. Attys. Gen., Atlanta, Ga., for appellant.

Reuben A. Garland, Garland & Garland, Edward T. M. Garland, Atlanta, Ga., for appellee.

Before SIMPSON, MORGAN and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge.

■ Appellee Woodrow Whisman was convicted of murder and sentenced to death by the Superior Court of Chattooga County, Georgia on January 23, 1965. This appeal, which is the latest development in a long history of litigation, arose when appellee filed an application for a writ of habeas corpus in the United States District Court, alleging nine violations of his constitutional rights. A stay of execution was immediately granted, and two months later, while his application was pending, the United States Supreme Court rendered its decision in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L. Ed.2d 776 (1968), dealing with the qualifications of jurors necessary for the imposition of a death sentence. The district court on July 22, 1968, remanded the case to the state trial court for compliance with Witherspoon concerning sentencing.[1] After a hearing, the state trial court concluded that there had been no violation of the Witherspoon standard, and the Georgia Supreme Court affirmed. Whisman v. State, 224 Ga. 793, 164 S.E.2d 719 (1968).

Appellee renewed his motion for a writ of habeas corpus, and on May 12, 1969, the court below again voided his sentence and remanded to the state trial court for compliance with Witherspoon. The court in the remand ruled that the exclusion of the eight prospective regular jurors was correct and did not void the sentence, but that the exclusion of two of three veniremen in the selection of an alternate juror was erroneous and invalidated the death sentence. From this order of remand, appellant filed a notice of appeal within thirty days, pursuant to Fed.R.App.P. 4(a).

Appellee now contends that (1) during voir dire examination for the regular jury, eight veniremen were excluded although it was never unmistakably clear that they would automatically object to the death penalty, and (2) that three prospective alternate jurors were also improperly excluded in violation of Witherspoon.

I. Selection of the Regular Jury Panel

■ Appellee's first contention concerns the exclusion of eight veniremen of the regular jury panel who conscientiously objected to the death penalty. We have serious doubts whether appellee, in the absence of an appeal or cross appeal, may now contest the ruling of the district court that the exclusion of these jurors was correct and within the test of Witherspoon.[2] However this may be, we have examined the record and find ourselves in agreement with the district court that the eight veniremen of the regular jury panel were correctly and properly excluded. The Witherspoon decision narrows the basis for exclusion by emphasizing that a mere reluctance in or an abstract belief against capital punishment is not sufficient grounds for challenging a juror for cause. With-

1. Although the effect of *Witherspoon* was retroactive, the conviction itself was not invalidated, in light of Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

The district court, finding that appellee had not exhausted all of his state remedies, retained jurisdiction of the remaining grounds of his application and allowed him 15 days after completion of the state proceedings to renew his application for habeas corpus relief.

2. The lower court's remand was based on a finding that two of three veniremen examined for the selection of an alternate juror were improperly excluded. Appellee filed no notice of appeal concerning the unfavorable portion of the court's ruling dealing with the regular panel.

erspoon v. Illinois, supra, 391 U.S. at 522, 88 S.Ct. 1770. The trial judge must determine whether the prospective juror only harbors such a belief, or would in reality refuse under any circumstances to inflict the death penalty. The judge or the prosecuting attorney must ask a question, the reply to which will demonstrate unequivocally that the venireman "would automatically vote against the imposition of capital punishment no matter what the trial might reveal, * * *" Witherspoon v. Illinois, supra, at 516 n. 9, 88 S.Ct. at 1774, Boulden v. Holman, 394 U.S. 478, 482, 89 S.Ct. 1138, 22 L.Ed. 2d 433 (1969). We have examined the questions propounded to these eight prospective jurors, examples of which are set out in the margin.[3] In addition to being asked whether or not he was opposed to capital punishment each of the eight jurors was also asked a question that elicited a reply indicating that under no circumstances would he vote in favor of the death sentence. Although the questions put to these jurors were not expressed in the most articulate language, we find that the court and counsel made it unmistakably clear to these prospective jurors that only such jurors who could not or would not impose the death penalty under any circumstances would be excused for cause.

## II.   Selection of an Alternate Juror

Appellee contends that the three veniremen subjected to voir dire examination in the selection of an alternate juror were also improperly excluded. The questions propounded to these veniremen were as follows:

"CLERK—Howell Dalton

MR. COOK—Are you conscientiously opposed to capital punishment?

JUROR—Yes, sir.

MR. COOK—Beg you pardon.

JUROR—Yes, sir.

COURT—For no reason, would you return a verdict to inflict death upon the defendant?

JUROR—No.

COURT—You may leave the jury box. * * *

CLERK—Mrs. W. W. McDaniel

MR. COOK—Are you conscientiously opposed to capital punishment?

COURT—That's for cause.   You may leave the jury box. * * *

CLERK—H. G. Ramey

MR. SELF—Are you conscientiously opposed to capital punishment?

JUROR—Nods yes.

COURT—Mr. Ramey, do you mean by that, that you would not, under any circumstances impose the death penalty?

JUROR—According to my religious belief, I couldn't be a party to it.

COURT—You may leave the jury box. * * *

CLERK—William B. Hare

MR. COOK—Are you conscientiously opposed to capital punishment?

JUROR—I am, sir.

MR. COOK—That is to say that under circumstances and under no conditions irrespective of the severity and gravity of the crime that you would not impose it?

JUROR—I could not.

MR. COOK—That will be for cause, your Honor.

COURT—You may be excused.   Vacate the box. * * *"

---

3.  "CLERK—Green Penn

MR. SELF—Are you conscientiously opposed to capital punishment?

JUROR—I don't believe in it.

MR. SELF—What?

JUROR—I don't believe in capital punishment.

MR. SELF—You don't believe in capital punishment.

COURT—Do you mean that under no circumstances that you, notwithstanding what the evidence might show, that you would vote to impose the death penalty, you would under no circumstances?

JUROR—No, sir.

COURT—You may leave the jury box. That's for cause. * * *

CLERK—John K. Young

MR. SELF—Are you conscientiously opposed to capital punishment?

JUROR—Yes, sir.

MR. SELF—He says yes.

COURT—By that, do you mean that you would not impose the death penalty under any circumstances notwithstanding what the evidence showed?

JUROR—No, sir.

**1054**

JUROR—Yes, sir.

MR. COOK—For cause.

COURT—You may leave the jury box.
    *    *    *

CLERK—Harvey Morgan

MR. COOK—Are you conscientiously opposed to capital punishment?

JUROR—Yes, sir.

MR. COOK—For cause, your Honor, conscientiously opposed to capital punishment.

COURT—You may leave the jury box.
    *    *    *"

Obviously, only the first of these (Mr. Dalton) was asked the additional question whether he would never return a verdict to inflict the death penalty under any circumstances. His exclusion, as the lower court ruled, was clearly correct, but the court remanded because the exclusion of the last two veniremen (Mrs. McDaniel and Mr. Morgan) did not comply with the requirements of *Witherspoon* and *Boulden*.

■ The question we must answer is whether *Witherspoon* and *Boulden* apply to the selection of the alternate jurors in the instant case. To our knowledge, no similar question has ever been raised in a federal appellate court. Appellee asserts that the mere presence and association of this "biased and prosecution prone alternate juror" with the regular jurors influenced the final verdict. Yet there is no indication of such influence in the case sub judice. The alternate juror did not participate in the deliberations or the verdict and he was properly instructed by the state trial judge not to discuss the case with anyone.[4]

A federal district court faced a problem similar to the one before us in the

case of Woodards v. Maxwell, 303 F. Supp. 690 (S.D.Ohio 1969). Out of twenty-seven persons given a voir dire examination, twenty-four were prospective regular jurors, while the remaining three were examined for their qualifications as alternate jurors. The court stated that "[b]ecause none of the alternate jurors participated in the deliberations or verdict at the conclusion of petitioners' trial, the Court will not consider their examination relevant in the discussion of the *Witherspoon* issue." 303 F.Supp. at 693.

A few courts, mostly at the state level, have faced the question of whether the erroneous exclusion of a single juror, or a few jurors, constitutes reversible error, and they have reached conflicting results. See, e. g., New Jersey v. Mathis, 52 N.J. 238, 245 A.2d 20, 27 (1968); People v. Schader, 71 A.C. 797, 80 Cal. Rptr. 1, 457 P.2d 841 (1969). The Tenth Circuit, however, in Bell v. Patterson, 402 F.2d 394, 399 (10th Cir. 1968) has held that

[i]t cannot be said that the exclusion of two prospective jurors whose testimony did not indicate a pre-trial commitment to irrevocably vote against the death penalty resulted in a jury that failed to reflect the evolving standards of decency that mark the progress of a maturing society.'   *   *   *   Hence, viewing the jury selection process in its entirety by weighing the responses of the excluded jurors, it cannot be said that 'the State crossed the line of neutrality' and entered the domain of the impartial jury proscribed by the Sixth and Fourteenth Amendments.

In the instant case, there was an effort to select a fair jury, and there is no

---

4. Specifically, the state trial judge instructed him that

"You are not permitted to go back into the jury room. In the event one of the jurors became incapacitated, and we got down to eleven, then you would take his place, and in that event, you would participate in the deliberations

as if you had been that twelfth man all along. So you twelve gentlemen may retire.

Mr. Alternate  *  *  *  let me instruct you not to discuss this case with anybody or permit anybody to discuss it with you."

indication in the record of an attempt to compose a "hanging jury."

We therefore hold that the *Witherspoon* and *Boulden* exceptions do not void the death sentence as long as the alternate juror selected is not needed, does not sit in on the deliberation or participate in the verdict, and provided that there is no indication that he influenced the regular jurors or prejudiced the rights of defendant. There is no language in either of these cases which suggests an intent that their requirements extend to nonparticipating alternate jurors. On the other hand, the Court in *Witherspoon* was concerned with the specific verdict as imposed, for it stated: "Specifically, we hold that a sentence of death cannot be carried out *if the jury that imposed or recommended it* was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction." 391 U.S. at 521–522, 88 S.Ct. at 1776–1777 [emphasis added].

Finally, we would be more sympathetic to appellee's contentions if there were suggestions in the record of prejudice to his rights. There was no effort by his attorneys to demonstrate any undue influence exercised by the alternate juror. We will not presume prejudice based on a mere theoretical fear that the alternate juror disobeyed the judge's instructions and tried to pressure the other jurors. See United States v. Ellenbogen, 365 F. 2d 982, 989 (2d Cir. 1966). His presence apart from anything else during a portion of the trial does not vitiate the jury's verdict.

The state court verdict and judgment contained no constitutional infirmities under *Witherspoon*, supra. It was error for the district court to set them aside. Accordingly, while the judgment of the district court is Affirmed regarding its ruling that the eight regular panel jurors were correctly excluded, the ruling regarding the alternate jurors is Reversed.