James Lee **MARION**, Petitioner-Appellant,

v.

Dr. George J. **BETO**, Director, Texas Department of Corrections, Respondent-Appellee.

No. 28421.

United States Court of Appeals, Fifth Circuit.

Nov. 6, 1970.
Rehearing Denied and Rehearing En Banc Denied Jan. 4, 1971.

Richard J. Clarkson, Law Offices Burnett & Childs, Odessa, Tex., for petitioner-appellant.

Crawford C. Martin, Atty. Gen. of Tex., Nola White, First Asst. Atty. Gen., Pat Bailey, Executive Asst. Atty. Gen., Allo B. Crow, Jr., Robert C. Flowers, Asst. Attys. Gen., Austin, Tex., James Mashburn, Dist. Atty., Midland County, Midland, Tex., for respondent-appellee.

Before GEWIN, GOLDBERG and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This is an appeal from the denial, after hearing, of a Texas state prisoner's application for writ of habeas corpus.[1] A prior appeal to this Court from a district court denial of habeas relief is reported as Marion v. Harrist, 5 Cir. 1966, 363 F.2d 139, cert. denied 386 U.S. 934, 87 S.Ct. 960, 17 L.Ed.2d 807. Both petitions stem from the petitioner's conviction for murder and resulting death sentence.

At the outset we may quickly dispose of Marion's allegations that (1) the trial court erroneously failed to make an independent determination of the voluntariness of his two written confessions and of statements made by appellant to psychiatrists, (2) that the trial court improperly charged the jury on the issue of the voluntariness of the confessions, (3) that the trial court erroneously refused to allow pretrial discovery of the confessions, (4) that appellant was denied the right to counsel at critical stages in the proceedings, and (5) that the trial court's instruction to the jury on the question of insanity deprived the appellant of the due process of the law. We believe that these matters have been fully and fairly developed and properly disposed of adversely to appellant in Sections I, II, III and IV of the district court's opinion reported at 302 F.Supp. 913.

The appellant also urges that the death penalty constitutes cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. The Supreme Court of the United States stated in Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 597, 2 L.Ed.2d 630 (1958), albeit in dictum, that the death penalty did not violate the constitutional concept of cruelty. Despite recent attacks on that language we have seen nothing to indicate that the Supreme Court's position has changed. See also Sims v. Eyman, 9 Cir. 1969, 405 F.2d 439; Segura v. Patterson, 10 Cir. 1968, 402 F.2d 249.

The appellant claims that the Texas practice of allowing the jury discretion to assess the death penalty without directions or guidelines violates due process and that the Texas single verdict procedure violated due process by forcing the defendant to choose between presenting evidence to mitigate punishment or maintaining his privilege against self-incrimination. Similar sentencing schemes have been approved by several courts. Andres v. United States, 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055 (1948); Sims v. Eyman, supra; Segura v. Patterson, supra; Petition of Ernst, 3 Cir. 1961, 294 F.2d 556. Cf. Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Giaccio v. Pennsylvania, 382 U.S. 399, 405 footnote 8, 86 S.Ct. 518, 522, 15 L.Ed.2d 447, 451 (1966).

The one remaining matter is a *Witherspoon*[2] argument by appellant that the trial court excluded jurors who voiced only general conscientious scruples against the infliction of the death penalty. A prior determination was made in the courts of the State of Texas that *Witherspoon* was not violated; the district court made an independent determination based on the same facts and reached the same conclusion. We disagree, and reverse and remand for a new trial.

In reversing the district judge, we do so not because of disapproval of his findings of fact but because we disagree with the legal conclusion which flows from those facts. A total of 71 jurors were examined before 12 were chosen to sit on the jury. 26 of the 71 were excused for cause on the basis of their attitudes regarding the death penalty.[3]

---

1. The district court's written opinion is reported at 302 F.Supp. 913 (N.D.Tex. 1969).

2. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

3. The pertinent parts of the questions and answers asked each juror excused for cause because of such attitudes are contained in Appendix A of the district court's reported opinion.

The district court concluded that 16 of the 26 unequivocally stated that they could not vote for the death penalty under any set of circumstances. Of the remaining 10, two were excused with the agreement of defense counsel, and a third was excused for an adequate reason other than scruples against the death penalty. Venireman Mr. Dunn, who stated that "I think I probably could." (vote for the death penalty) was nonetheless excused for cause, the trial judge stating "There was too much hesitation and he qualified it with saying that he probably could". Several other veniremen, notably Mrs. Robbins, Mr. Nutt, Mr. Akard, Mr. McKee and Mr. Nelson, were excused for answers which the trial judge and the district court thought *implied* that they could under no circumstances render a death verdict. The district court found that three prospective jurors, Mrs. Hobbs, Mr. Moore and Mrs. Speck, were excused solely for their conscientious scruples against the death penalty. The court below commented that several jurors who had expressed reservations about the death penalty were not excused, and concluded that under the total circumstances the State had not systematically excluded those who voiced only conscientious scruples against the infliction of the death penalty.

In *Witherspoon,* the Supreme Court stated:

"Specifically, we hold that a sentence of death cannot be carried out if the jury that imposed or recommended it was chosen by excluding veniremen for cause simply because they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. No defendant can constitutionally be put to death at the hands of a tribunal so selected". 391 U.S. at 521–522, 88 S.Ct. at 1776.

The Supreme Court further implied that doubts concerning the ability of a venireman to subordinate his personal views to his oath as a juror to obey the law of the state should be resolved against exclusion, stating in footnote 9, on page 515–516 of the opinion, 88 S.Ct. on page 1774:

"Unless a venireman states *unambiguously* that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that this is his position." (Emphasis added).[4]

We note that this statement is in sharp contrast to the words of the Texas Court of Criminal Appeals in the post-*Witherspoon* case of Pittman v. State, 434 S.W.2d 352, 357 (1968):

"It has long been the holding of this Court that if it is doubtful whether the juror had conscientious scruples in regard to the infliction of capital punishment, the court's action in sustaining the State's challenge for cause on that ground will be sustained on appeal. Burrell v. State, 18 Tex. 713; Sawyer v. State, 39 Tex.Cr.R. 557, 47 S.W. 650; Myers v. State, 77 Tex.Cr. R. 239, 177 S.W. 1167; Vickers v. State, 92 Tex.Cr.R. 182, 242 S.W. 1032; see also Article 35.21, V.A.C.C. P."

The bare question here then is whether the improper exclusion for cause of a relatively small number of the total number of veniremen questioned on the grounds of mere conscientious scruples against the death penalty deprives the defendant of the impartial jury required by the Sixth and Fourteenth Amendments. Several courts have answered this query in the negative. Bell v. Patterson, 10 Cir. 1968, 402 F.2d 394 (holding that the improper exclusion of 2 of 15 prospective jurors ultimately excluded on the death issue did not deprive the de-

---

4. These words were emphatically repeated in Boulden v. Holman, 394 U.S. 478, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969) and Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970).

fendant of a jury composed of an impartial cross-section of the community); State v. Mathis, 52 N.J. 238, 245 A.2d 20, 27 (N.J.1968), (stating in dictum that the improper exclusion of a single juror did not deprive the defendant of representatives from the anti-capital punishment section of the community); Pittman v. State, supra, (stating that the exclusion of three jurors whose answers had been ambiguous out of 42 jurors who were excluded on the death issue did not require reversal); Scott v. State, 434 S. W.2d 678 (Tex.Ct.Crim.App.1968) (holding that the exclusion of several jurors without a full showing that they could not in any case vote for the death penalty did not require reversal, on the authority of *Pittman*, supra). These cases generally distinguish *Witherspoon* on the basis that in that case *all* of those excused had been improperly eliminated and therefore there could be no doubt that the *Witherspoon* jury had been constituted of only those members of the community who had attitudes positive toward the death penalty.

Several cases take the opposing view, holding that even the improper elimination of one prospective juror requires reversal. Woodards v. Maxwell, 303 F. Supp. 690 (S.D.Ohio 1969); People v. Schader, 80 Cal.Rptr. 1, 457 P.2d 841 (Sup.Ct.1969); In re Hillery, 79 Cal. Rptr. 733, 457 P.2d 565 (Sup.Ct.1969).

This Circuit has never decided this precise question so that our decision here will establish a precedent, for the present at least. After some hesitation, we are inclined to agree with the cases last cited. The magnitude of a decision to take a human life is probably unparalleled in the human experience of a member of a civilized society; indeed, many agree on moral or religious grounds that it is incomprehensible that an advanced society such as ours should yet engage in such practice. Given the weightiness of the subject involved it really does not follow that the improper exclusion of a relatively small number of the total veniremen examined does not prejudice the defendant's rights to an impartial cross-section of the community. Where, as here, unanimity of decision is required to impose the death sentence, the stark reality is that one improperly excluded juror may mean the difference between life or death for a defendant. Although a defendant certainly has no assurance that a properly-empaneled jury will not impose the death penalty, it seems to us that in light of the vast difference in treatment which may result from the improper exclusion of a single venireman, even that degree of error is prejudicial to the rights of a defendant in a capital case.[5]

We therefore reverse[6] and remand this case to the district court with directions that the State of Texas be given

---

5. Our holding is not inconsistent with the opinion of this Court in Jackson v. Beto, 5 Cir. 1970, 428 F.2d 1054. In that case two of twenty-three veniremen testified to non-compliance with *Witherspoon*, while the trial judge testified that no venireman was excused unless he stated that he could not vote for the death penalty under any circumstances. The district judge resolved this conflict in the testimony by finding as a fact that no juror had been excused without proper questioning, and we concluded that his findings were not clearly erroneous. In the instant case the district court found that several veniremen were improperly excused. Nor does our holding conflict with Smith v. Whisman, 5 Cir. 1970, 431 F.2d 1051. In *Smith* we held that the improper

exclusion of veniremen in the selection of an alternate juror did not require reversal as long as the alternate juror is not needed, does not sit in on the deliberations or participate in the verdict, and provided that there is no indication that the alternate juror influenced the regular jurors or prejudiced the rights of the defendant.

6. It should be understood that our holding that the improper exclusion of prospective jurors was prejudicial to the rights of the petitioner-appellant and requires reversal relates only to the punishment imposed and not to the legality of the conviction. Witherspoon v. Illinois, 391 U.S. 510, 522, 88 S.Ct. 1770, 20 L.Ed.2d 776, footnote 21.

the option of determining within a reasonable time to be fixed by that court whether to (1) resentence the defendant to a sentence not to exceed life imprisonment without a retrial on the issue of guilt, provided such procedure is appropriate under Texas law, or (2) vacate the appellant's conviction and sentence and retry him. If neither option is exercised within the time fixed by the district court the writ must be granted and the appellant released.

Reversed and remanded, with directions.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.