**David E. BARLOW, Petitioner,**

v.

**L. L. WAINWRIGHT, Respondent.**

**Civ. A. No. 1683.**

United States District Court,
N. D. Florida,
Tallahassee Division.

Feb. 17, 1971.

**830**

David E. Barlow, in pro. per.

Robert L. Shevin, Atty. Gen. of Fla., Tallahassee, Fla., for defendant.

### OPINION–ORDER

MIDDLEBROOKS, District Judge.

This cause is before this Court upon response having been given to order to show cause of January 20, 1971. Petitioner was tried by jury and sentenced to death for first degree murder on March 2, 1968, in the Circuit Court of Franklin County, Florida. In his direct appeal to the Supreme Court of Florida, petitioner, as he does now, alleged that in light of the rationale of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), a venireman was improperly excluded from the panel of prospective jurors and that therefore his sentence should be vacated and that the same should be reduced to life imprisonment. The judgment of conviction and judgment of sentence were affirmed on appeal. See Barlow v. State, 238 So.2d 602 (Fla.1970). Because the federal constitutional issue as raised before the Supreme Court of Florida is identical to that issue raised in this Court, exhaustion of available state remedies has occurred. Young v. Alabama, 427 F.2d 177, 5th Cir. 1970.

Unlike many cases which have since followed Witherspoon, there are two noteworthy facts here present which may be pivotal facts when a determination on the merits is reached in this matter. First, there was no "systematic exclusion" of veniremen insofar as that phrase connotes a widespread or pervasive ostracism of veniremen opposed to capital punishment but only the exclusion of a single juror for cause. Secondly, at the time the one particular venireman was excused at the trial in the State Court, the State had not exhausted its peremptory challenges. With these facts in mind this Court now addresses the issue at hand.

Generally it has been stated that Witherspoon, supra, stands for the limited proposition that the state cannot challenge a venireman for cause merely because he said he was "opposed to capital punishment" or indicated that he had "conscientious scruples against inflicting it." Williams v. Wainwright, 427 F.2d 921, p. 923, 5th Cir. 1970. Or, as another Court has commented, Witherspoon "narrows the basis for exclusion by emphasizing that a mere reluctance in or an abstract belief against capital punishment is not sufficient grounds for challenging a juror for cause." Smith v. Whisman, 431 F.2d 1051, p. 1052, 5th Cir. 1970.

In what must be one of the most celebrated footnotes in legal writing, the following expression is to be found:

" \* \* \* Unless a venireman states unambiguously that he would automatically vote against the imposition of capital punishment no matter what the trial might reveal, it simply cannot be assumed that that is his position." Witherspoon, supra, 391 U.S. at 516, n. 9, 88 S.Ct. at 1774.

See also Boulden v. Holman, 394 U.S. 478, 482, 89 S.Ct. 1138, 22 L.Ed.2d 433 (1969).

■ Collectively these recitations and comments are intended to provide procedural safeguards for an accused in a capital case. It is of no moment here that the trial held in this case predated Witherspoon, supra, since the rule contained therein has received implicit ret-

roactive application. See *Boulden,* supra; see also Maxwell v. Bishop, 398 U.S. 262, 90 S.Ct. 1578, 26 L.Ed.2d 221 (1970).

■ The initial consideration becomes whether the State made an impermissible exclusion under *Witherspoon.* In respondent's Exhibit "A", page 51, the following exchange occurred:

\* \* \* \* \* \*

Mr. Hopkins: Do you feel that capital punishment is a proper punishment in a proper case?

Juror: No, sir.

Mr. Hopkins: Does anybody else feel that they are against capital punishment, as such?

(NO AUDIBLE RESPONSE.)

Mr. Hopkins: We submit this juror is disqualified, Your Honor.

The Court: You may stand down, Mr. Kendrick.

\* \* \* \* \* \*

At first blush this exclusion would appear fatal under *Witherspoon.* A similar response to a nearly identical question was considered in *Witherspoon* and there the Court exclaimed:

"As the voir dire examination of this venireman illustrates, it cannot be assumed that a juror who describes himself as having 'conscientious or religious scruples' against the infliction of the death penalty or against its infliction 'in a proper case' \* \* \* thereby affirms that he could never vote in favor of it or that he would not consider doing so in the case before him. \* \* \*." *Witherspoon,* supra, 391 U.S. at 515–516, n. 9, 88 S.Ct. at 1773.

However, there may be countervailing considerations which would not render this solitary exclusion an improper act. See Bell v. Patterson, 402 F.2d 394 (10th Cir. 1968).

It should be remembered that *Witherspoon* was decided upon the principle of the right of an accused to an impartial jury as contained in the Sixth Amendment of the United States Constitution and made obligatory upon the States by way of the Fourteenth Amendment. Thus, this Court's query relates to whether or not the single exclusion here prejudiced the rights of petitioner to such an extent that he was denied an impartial jury. This Court is of the opinion that he was.

In reaching this determination this Court is not unmindful of the recent pronouncements contained in Marion v. Beto, 434 F.2d 29 (5th Cir. 1970). There it was said:

"\* \* \* Given the weightiness of the subject involved it really does not follow that the improper exclusion of a relatively small number of the total veniremen examined does not prejudice the defendant's rights to an impartial cross-section of the community. Where, as here, unanimity of decision is required to impose the death sentence, the stark reality is that one improperly excluded juror may mean the difference between life or death for a defendant. \* \* \*." *Ibid.* at 32.

Respondent argues that Marion v. Beto is factually distinguishable in view of Florida Statutes, Section 919.23, F.S. A., which provides that the vote of a majority of the jurors is required for mercy in a capital case. Such is not the case under Texas criminal procedure as manifested by Marion v. Beto, supra. Perhaps in a proper case this argument would present a distinction of some merit, but in the instant case it is unpersuasive as it is unknown what number of jurors voted for the death penalty and what number voted against the death penalty. If the vote were seven to five for the death penalty would the inclusion of this juror have affected the result?

Having studied and considered *Witherspoon* and its progeny, this Court in reaching a determination of the issue in this cause should examine the total overall effect of the voir dire interrogation. The ultimate inquiry becomes whether or not exclusion of a single juror for

cause resulted in a systematic elimination of that segment of the community who oppose capital punishment:

"It was indicated in *Witherspoon* that the basis for the decision was the fact that there had been a systematic exclusion of all who opposed capital punishment. Having eliminated a substantial element of society the jury could not be said to express the conscience of the community. '[W]hen it swept from the jury all who expressed conscientious or religious scruples against capital punishment and all who opposed it in principle, the State crossed the line of neutrality.' [*Witherspoon*, supra, at 520]. The crucial inquiry thus relates to whether it can be said that the jury failed to reflect a cross-section of society thereby losing its neutrality as a result of the erroneous exclusion of two 'scrupled jurors'. * * * It would appear then that the jury did reflect the prevailing mores of society. It remained neutral in that there was not the systematic exclusion of any significant element of the community.

" * * * Hence, viewing the jury selection process in its entirety by weighing the responses of the excluded and non-excluded prospective jurors, it cannot be said that 'the State crossed the line of neutrality' and entered the domain of the impartial jury proscribed by the Sixth and Fourteenth Amendments." Bell v. Patterson, supra, 402 F.2d at 398–399.

Upon review of the record before this Court it is readily apparent that the State has "crossed the line of neutrality." The questions of the State Attorney asked the jury panel relative to their belief in or opposition to capital punishment were such that they wrought the systematic exclusion of any juror who opposed capital punishment. In this instance, only the mere exclusion of a single juror was needed to accomplish that which is forbidden by *Witherspoon*. Additionally, the questions put to succeeding jurors clearly show the desire of the State Attorney to discover jurors' beliefs and scruples and to excuse those whose conscience was opposed to capital punishment. Because no other prospective juror called failed to voice opposition to infliction of capital punishment, there was no need to excuse any of those for cause. In this light, this Court concludes that petitioner was not afforded the right to an impartial jury as commanded by the Sixth and Fourteenth Amendments.

Respondent argues in the alternative that no unfair result obtained as a consequence of the exclusion of this one juror because the State had not at that time exhausted its peremptory challenges. This argument overlooks the very design of *Witherspoon* which proscribes exclusion of a venireman for cause if he is opposed to capital punishment. In this case what was forbidden was done. Respondent claims that this impermissible result could have been negated by the State's exercise of one of its remaining peremptory challenges. This Court will not join in this kind of imprecise speculation and in nowise intimates any view as to the correctness of that argument.[1] The fact remains that a juror was excused for cause because he opposed capital punishment and that this act deprived petitioner of his right to an impartial jury. Therefore, it is upon consideration, hereby

Ordered:

Respondent and the State of Florida shall be given sixty (60) days to determine whether to resentence petitioner to a sentence not to exceed life imprisonment without a retrial on the issue of guilt, provided such procedure is appropriate under Florida law, or to vacate petitioner's conviction and sentence and to retry him. This order in nowise affects the legality of the conviction already obtained.

---

1. This Court, however, is unpersuaded by the dictum of State v. Mathis, 52 N.J. 238, 245 A.2d 20 (1968) referred to by respondent.