Robert CURRY, Appellant,

v.

The STATE of Texas, Appellee.

No. 43602.

Court of Criminal Appeals of Texas.

April 20, 1971.

Rehearing Denied June 9, 1971.

Walter S. Smith, Jr., G. Stanley Rentz, Waco, for appellant.

Martin D. Eichelberger, Dist. Atty., Frank M. Fitzpatrick, Jr., Kenneth H. Crow and James R. Barlow, Asst. Dist. Attys., Waco, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

MORRISON, Judge.

The offense is murder with malice; the punishment, death.

█ Appellant's first seven grounds of error relate to the court's charge to the jury on the guilt-innocence phase of the trial. All of appellant's objections to the charge, which are included in the statement of facts, were made orally. Such objections are not sufficient to preserve error for review by this Court. See Arts. 36.14 and 36.19, Vernon's Ann.C.C.P., and Seefurth v. State, Tex.Cr.App., 422 S.W.2d 931. However, in light of the penalty assessed in this case, we will briefly discuss each of these contentions.

█ Appellant's first and second contentions are that the court shifted the burden of proof to the defendant in the charge on accident, which charge reads as follows (emphasis added):

"You are instructed that no act done by accident is an offense, therefore, *if you find from the evidence that the Deceased, Ronald Curry died from injuries received by him* when his head accidently struck the concrete porch or steps when he fell, if he did so fall, then the defendant would not be guilty as charged in the indictment."

Immediately following this instruction, although on the next page, the court further charged:

"In all criminal cases the burden of proof is on the State. The Defendant is presumed innocent until proved guilty by competent evidence beyond a reasonable doubt; and if you have a reasonable doubt as to the guilt of the Defendant in this case, then you shall return a verdict of not guilty."

In view of the fact that the court, immediately following the charge on accident, gave the general charge on the burden of proof, we cannot see how appellant was prejudiced by the court's failure to state the burden in the charge on accident. Compare Turner v. State, Tex.Cr.App., 371 S.W.2d 46.[1]

Appellant's third contention is that the court erred in failing to charge that the deceased child's mother, Celestine Brown, was an accomplice witness as a matter of law; alternatively, in ground of error number four, he contends that the court should have submitted to the jury the question of fact of whether or not Mrs. Brown was an accomplice witness.

■ Mrs. Brown was the only witness to testify to any act of violence committed by appellant upon the deceased child. She and her child lived with appellant; they were completely dominated by him. The fact that she made no report of his brutalizing the child could not make her an accessory, so as to become an accomplice witness, as she was not shown to have been questioned by officers and then to have given false answers. Littles v. State, 111 Tex.Cr.R. 500, 14 S.W.2d 853; The Law of Principals, Accomplices and Accessories Under the Texas Statutes, 1 V.A.P.C. XIII (1952) at XXV–XXVII. Furthermore, there is no evidence to show that Mrs. Brown in any way caused the death of her child or aided and encouraged appellant to kill her child.

■ Appellant's fifth, sixth and seventh contentions are that the court erred in failing to charge the jury on the law of negligent homicide. Such issue was not raised by any of the evidence in this case.

Appellant's first seven grounds of error are overruled.

Appellant's eighth ground of error is that the court committed fundamental error in submitting, in addition to a form recommending probation, only the following verdict forms at the punishment stage:

"We, the jury, having found the defendant, ROBERT CURRY, guilty of the offense of murder with malice aforethought, assess his punishment therefor at confinement in the state penitentiary for a term of _____ years.

_____
Foreman"

"We, the jury, having found the defendant, ROBERT CURRY, guilty of the offense of murder with malice aforethought, assess his punishment therefor at death.

_____
Foreman"

No objection was made to the verdict forms submitted by the court.

■ Although the trial court should have submitted a form which provided for the assessment of life imprisonment, the jury could have used the form providing for a term of years in order to assess a life sentence. Additionally, they could have written their own form. This Court has held that, when no objection was interposed to such submission, failure of the court to submit all possible alternatives was not reversible error. Art. 36.19, supra; Crayton v. State, 166 Tex.Cr.R. 324, 314 S.W.2d 87; Long v. State, 128 Tex.Cr.

---

1. Art. 36.19, supra, reads as follows: "Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the *judgment shall not be reversed unless the error appearing from the record was cal-* *culated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial.* All objections to the charge and to the refusal of special charges shall be made at the time of the trial."

R. 235, 79 S.W.2d 1088. The trial court properly charged the jury that they could assess a punishment of life imprisonment absent a showing to the contrary, we must assume that the jury followed that charge. As this Court said in Long v. State, supra, "We must accord to juries intelligence and reason until the contrary is shown by some action or deed set out in some fact showing."

■ Appellant's ninth ground of error is that the court erred in appointing to represent him two members of the bar who were inexperienced in the trial of capital felonies. The record reflects that one of appellant's trial attorneys had been practicing law for about ten months at the time of the trial, and that the other trial counsel had been in the practice of law for about one and one-half years at the time of the trial. Although it is a good practice for trial courts to appoint more experienced attorneys in capital cases, the trial court cautiously appointed two attorneys, instead of just one attorney, to represent appellant. After an examination of the entire record in this cause, we have concluded that appellant's trial counsel effectively represented him. Davis v. State, Tex.Cr. App., 463 S.W.2d 434.

■ The tenth, eleventh and twelfth grounds of error allege jury misconduct. The Amended Motion for New Trial had attached thereto the affidavits of two members of the jury, signed on September 17, 1969. At the hearing on the motion, the State offered two affidavits from each of these two jurors, which were signed on September 18, 1969.

The two affidavits offered by appellant were identical and said that one of the jurors stated in the presence of the other jurors that "if the Defendant received either a life sentence or 99 years, he would be free on parole. This was discussed by the jury and we agreed that because the

Defendant would be free on parole as stated, that that was too light a sentence."

In addition to alleging that the previous affidavits had been obtained through trickery, the State's affidavits clarified the allegations in the appellant's affidavits. Both of the jurors alleged coercion in signing the first affidavits and stated that the first affidavits were not entirely accurate. They then went on to say that the question of parole was mentioned briefly; that a note was thereupon sent to the court from their foreman asking whether or not the defendant could receive some sentence without parole; that the court stated that he could not answer the question; and that, after the jury received the court's reply, there was no further discussion about parole. One juror's affidavit stated, "I voted for the death penalty verdict because I thought it was the proper one under the evidence." The other juror's affidavit stated, "We were not bound by any agreement among us as to what Robert Curry might or might not get in the future * * *"

The affidavits submitted by the State indicate that the first affidavit was originally brought to one juror with the allegation that one of the jurors stated that the defendant would get parole in eight to twelve years and that, after she refused to sign the affidavit in that form, it was changed to the one quoted above. The second juror received the first affidavit one-half hour later, and, at that time, it was in the form quoted above.

Neither of the two jurors testified at the hearing, as the trial court refused to allow appellant to call them to the stand. The court's ruling was based on his finding that the first affidavits had been obtained through chicanery and were, therefore, involuntary and inadmissible.

In Baltazar v. State, Tex.Cr.App., 373 S.W.2d 753, upon which appellant relies,

there was a positive assertion of what would happen to the accused, which statement was untrue and harmful to the accused. In the case at bar, there was an assertion that appellant would, at some vague and indefinite time in the future, be paroled. Such does not constitute reversible error. Salcido v. State, 167 Tex. Cr.R. 173, 319 S.W.2d 329. The trial court properly decided from the affidavits that no jury misconduct had been shown.

■ In his thirteenth and fourteenth grounds of error appellant contends that the trial court erred in his preliminary instructions and in his charge on guilt-innocence by instructing the jury that the maximum punishment for murder without malice was five years. At neither juncture were objections made. Appellant cites us to no authority holding that such an instruction is reversible error. Furthermore, under the facts in this case, we cannot see how appellant was harmed thereby.

■ The fifteenth ground of error is that Art. 1257, Vernon's Ann.P.C., which provides that one of the alternative punishments for murder shall be the death penalty, is unconstitutional in that it constitutes cruel and unusual punishment. Recently, we held adversely to appellant's contention in Smith v. State, Tex.Cr.App., 437 S.W.2d 835, 841. See also Morales v. State, Tex.Cr.App., 458 S.W.2d 56.

■ The sixteenth, eighteenth, nineteenth, twentieth, twenty-first and twenty-second grounds of error are that there is a fatal variance between the allegations of the indictment and the proof and that the evidence is insufficient to support the conviction. The indictment alleged that appellant killed the deceased "by striking and beating him on the head and body with a stick or piece of wood" and "by a means unknown to the Grand Jury."

The proof showed that the immediate cause of death was head injuries which could not have been inflicted as the result of an accident. Appellant's wife testified about three months of brutality inflicted upon the child by appellant. Such brutality included forcing the child to soak his feet in water so hot that they blistered and the skin and muscle tissue eventually rotted out; beating the child about his buttocks frequently and to the extent that the flesh on each side of the buttocks was exposed, in an area the size of a man's hand; striking the child in the face with his fist, causing the child's teeth to fall out; hitting the child with his fist, knocking him off his tricycle and causing his head to strike nearby rocks; beating his head against a door; causing the child to stand on his bloody feet; and repeatedly whipping the boy with a fan belt and various sticks and pieces of wood. Although a grand juror testified, outside the presence of the jury, that the grand jury was unable to ascertain the means of killing the child, from the testimony of the pathologist in which he was unable to say what means caused the death of the child, other than that it was caused by the head being struck or by the head striking an object, but in which he did exclude accident as a cause of death, it is apparent that the exact means used to inflict death upon this four-year old boy could not be ascertained with the exercise of due diligence. The court, in its charge, instructed the jury to find appellant guilty if they found that appellant killed the deceased either "by striking with a stick or piece of wood, or by a means unknown to the Grand Jury * * *"

We find the evidence sufficient to support the conviction and consistent with the allegations in the indictment. See Clark v. State, 151 Tex.Cr.R. 383, 208 S.W.2d 637 and Moree v. State, 147 Tex. Cr.R. 564, 183 S.W.2d 166.

■ The seventeenth ground is that the court erred in permitting the pathologist to testify as to any finding other than the immediate cause of death. Appellant denied any connection with the death, alleging that it had been caused by an accident; therefore, any testimony, including that of the pathologist, which tended to resolve the cause of death issue was relevant and admissible.

■ In appellant's grounds of error numbered twenty-three through thirty, he asserts that certain veniremen were excused who were not disqualified under the Witherspoon rule.[2] The answers of the veniremen excused will be summarized, since the voir dire of this panel consumed 543 pages of this record.

He first complains of excusing Mrs. J. B. Spurlock. She answered that there were no facts which she could imagine, no matter how atrocious, that would in her mind justify the death penalty and that she could not assess the death penalty under any set of facts or circumstances.

His next complaint relates to Mrs. Gertrude Jones. She stated that she could not think of any possible set of circumstances, no matter how terrible, that would secure from her a vote for the death penalty. She also said that she could not even give the death penalty to a man who, "for no reason at all * * * just walked in and shot (another man) and blew him apart."

The next is Tilmon Butler. In response to the prosecutor's question, " * * * no set of facts, however atrocious, however heinous, however horrible could if you were a juror, one of twelve, cause you, no situation could possibly be brought before you which would cause you to vote for the death penalty?" Butler replied, "That is right." Although appellant's counsel objected to the sustaining of the State's challenge for cause, he did not request the opportunity to further question Butler.

Appellant next objects to the excusing of venireman Cecil R. Blagg. Blagg stated that he did not "believe in taking a life for a life;" that there was no question about it, he could not think of any possible set of circumstances in which he could assess the death penalty; and that he believed in punishment, but not the death penalty.

Next, Mrs. Ruby Holloway stated that she could not vote to inflict the death penalty, and that there were no facts that could convince her that someone should receive the death penalty.

Next was Warren Tennyson. He said that no case, however horrible or atrocious, that might be presented before him as a juror would cause him to vote for the death penalty. He answered further that, if an accused had been examined by a psychiatrist and found to be sane, he still could not vote for the death penalty.

Finally, appellant contends that the court improperly excused Mrs. Anna L. Sutton. She stated that she did not think that she could vote to inflict the death penalty, no matter how atrocious or horrible the facts were shown to be. Appellant did not object to the sustaining of the State's challenge nor did he request the opportunity to examine Mrs. Sutton.

From the files of this Court, we have compared Mrs. Sutton's testimony with that of Jerry R. Dunn, a venireman in Marion v. Beto, 5 Cir., 434 F.2d 29. In Marion, supra, the petitioner's writ of habeas corpus was granted because several prospective jurors had been excused without having stated unequivocally that they could not inflict the death penalty under any set of facts. In the body of their opin-

2. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

ion, the Fifth Circuit Court of Appeals stated that venireman Dunn, in particular, had been improperly excused. Venireman Dunn never said that he could not give the death penalty or even that he thought he could not give the death penalty. In fact, after saying that he was personally opposed to the death penalty, he stated at various times. in his testimony that he thought he could vote for the death penalty, that he could possibly vote for the death penalty, and that he thought he could probably vote for the death penalty.

After close study and much consideration of the voir dire examination, we have concluded that no prospective juror was improperly excused under the holdings in Witherspoon, supra, and Marion, supra.

■ Appellant's final contention is that the trial court erred in overruling his objection to Mrs. Brown's testimony regarding a statement that the appellant made while in jail. She testified that, after she and the appellant were arrested, they were placed in adjoining cells. While they were in jail, she said, appellant told her not to say anything about the deceased's feet.

Under Art. 38.22, V.A.C.C.P. and Garner v. State, Tex.Cr.App., 464 S.W.2d 111, it was probably error for the court to have permitted such testimony. However, appellant cannot now be heard to complain about the admission of this testimony, as he subsequently introduced a written statement made by Mrs. Brown wherein she recited, "After we were placed in cells he was in the next cell to mine and he, Robert, told me not to say anything to nobody about Ronnies feet." By introducing substantially the same testimony as that objected to, appellant waived his complaint regarding that testimony. Morales v. State, Tex.Cr.App., 466 S.W.2d 293.

Finding no reversible error, the judgment is affirmed.