Michael John BELL, Appellant,

v.

Wayne K. PATTERSON, Appellee.

No. 10096.

United States Court of Appeals
Tenth Circuit.

Oct. 16, 1968.

Rollie R. Rogers, Denver, Colo. (Lew E. McClain, Denver, Colo., and L. Thomas Woodford, White Ridge, Colo., on the brief), for appellant.

Paul D. Rubner, Asst. Atty. Gen. (Duke W. Dunbar, Atty. Gen., and Frank E. Hickey, Deputy Atty. Gen., on the brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and HILL, Circuit Judges.

HILL, Circuit Judge.

Appellant, Michael John Bell, was tried and convicted for the crime of first degree murder and was sentenced to death by a jury in the District Court of the City and County of Denver, Colorado. The judgment was appealed to the Colorado Supreme Court and affirmed in Bell v. People, 158 Colo. 146, 406 P.2d 681. Thereafter, appellant filed with the state trial court a petition for post-conviction relief under Colo.R.Crim.P. 35. This motion having been denied, appellant again appealed to the Colorado Supreme Court which affirmed the lower court in Bell v. People, 431 P.2d 30. Subsequently thereto, appellant petitioned the federal district court for relief under 28 U. S.C. § 2254. After the issuance of an order to show cause and the holding of an evidentiary hearing, the court denied the writ and dismissed the petition and this appeal follows.

Appellant urges the following as grounds for reversal: (1) The confession was involuntary. (2) The jury was improperly qualified in favor of the death penalty in violation of due process. (3) The single-verdict procedure forced a choice between allocution and the privilege against self-incrimination; this procedure requiring the same jury to determine both guilt and punishment prevents the jury from acquiring facts upon which to base their penalty determination thus foreclosing the application of any rational standards; and that in any event the jury is not provided with an appropriate standard by which to exercise its sentencing function. (4) The denial of separate trials on insanity and guilt violates due process and equal protection. (5) The death penalty constitutes a cruel and unusual punishment. All of these contentions, except those in regard to jury sentencing, were presented to the state courts; thus the only question of exhaustion of state remedies relates to the single-verdict issue. The court below determined that because the identical questions had recently been passed upon by the Colorado Supreme Court in Segura v. People, 431 P.2d 768, it is highly probable that further attempts by appellant to gain relief would meet the same fate and hence there has been a practical exhaustion of state remedies. This aspect of the decision below has not been questioned.

Bell was arrested at 5:55 a.m. on the morning of September 12, 1962, following a city-wide manhunt for the slayer of a local policeman. The arresting officer,

Kenneth Pennel, was joined by a patrolman, Paul Holland, and together the two officers escorted the appellant to Denver Police headquarters, arriving there at approximately 6:30 a.m. Bell was held in a private office of Division Chief James Shumate until the latter arrived at 7:00 a.m. and began interrogation. The interrogation lasted until 7:55 a.m. when at that time a reporter recorded a confession of guilt. Appellant was thereafter formally booked, photographed, issued clothing and provided with food. At 10:15 a.m. Bell returned to Chief Shumate's office, where he read and signed his statement after making certain corrections thereto. At 10:50 a.m. appellant was taken before a magistrate and formally advised of his rights.

Appellant asserts, as he has throughout the various court proceedings related above, that the confession was involuntary and should have been excluded from the evidence of the original trial. This contention is based upon alleged coercion occurring after appellant arrived at police headquarters. Appellant contends that the confession was involuntary because: he had been told that he would be held incommunicado until he confessed; he was refused the assistance of counsel after specifically so requesting; he was interrogated after stating that he did not wish to talk; he was warned by an unidentified policeman that if he did not talk a bogus escape attempt would be staged and he would be shot; and he was subjected to various officers flaunting their revolvers in his face and exclaiming that they had their rights too. Testimony of appellant as to these contentions was given in an *in camera* hearing in the state trial court. Chief Shumate testified in that proceeding that after he arrived at 7:00 a.m. Bell had not requested an attorney and that no threats or duress of any kind were used at any time during the interrogation, and more specifically, that there had definitely been no display

of firearms. Shumate further testified that Bell had been advised that he did not have to make a statement but that if he did it could be used against him. At the conclusion of the *in camera* hearing the trial judge held that Bell had been advised of his rights and that the alleged threats were not made; the confession was therefore voluntary and admissible as evidence.

■ The federal district court required that an evidentiary hearing be held to determine whether Bell had been coerced prior to Chief Shumate's arrival at the police station. The hearing was felt to be necessary because only Bell and Shumate had testified at the *in camera* hearing, thus there was no direct evidence counteracting Bell's allegations as to the time interval prior to Shumate's interrogation at 7:00 a.m. At the evidentiary hearing appellant presented no additional evidence. Appellee's evidence presented at the hearing consisted of the testimony of officers Pennel and Holland who testified that at all times after having first placed Bell under arrest and upon his trip to the station and up until the time that Shumate arrived, there had been no threats or coercion, no display of police revolvers, no threats of a bogus escape attempt and no request by Bell for the assistance of legal counsel. It was thus determined that the aforesaid testimony corroborated the state court's determination as to voluntariness and when coupled with the presumption of correctness that adheres to state court determinations in matters of this type, the admission of the confession was not error.[1]

■ This court is required in dealing with the question of whether the confession was involuntarily elicited "to examine the entire record and make an independent determination of the ultimate issue of voluntariness."[2] It is agreed that in determining the admissibility of this confession both Escobedo[3]

1. Bell v. Patterson, 279 F.Supp. 760 (D. Colo.1968).

2. Davis v. State of North Carolina, 384 U.S. 737, 741, 86 S.Ct. 1761, 1764, 16 L. Ed.2d 895 (1966).

3. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

and Miranda [4] are not to be applied retroactively.[5] Inasmuch as the original trial of appellant occurred prior to the effective date of those decisions, this case is governed by the general standard of voluntariness as exemplified by pre-Escobedo decisions. Under the rules prevailing prior to those decisions, the factors bearing upon the voluntariness of this confession relate to the duration of the suspect's interrogation; the extent of his education; and whether he was allowed communication with the outside world.[6] The essential inquiry is whether the confession was in any way coerced so as not to be a product of the free and independent will of the confessor.[7]

■ After carefully reviewing all the evidence and the contentions of both parties, the facts surrounding appellant's confession establish that the district court was correct in finding, as did the state trial court, that the confession was voluntarily given. When provided with an opportunity to introduce evidence tending to show coercion in the evidentiary hearing held below, appellant produced not one witness to refute the testimony of the police that he had been advised of his right to remain silent and had not been subjected to coercion of any kind. Aside from the unsubstantiated accusations of appellant, all the evidence indicates that this was the classic situation in which after a brief period of interrogation, an accused, exercising his own intelligent free will, spontaneously acknowledges responsibility for his actions. The confession was obtained after less than an hour of police interrogation and a mere two hours after the initial arrest. In view of these circumstances it is clear that the confession was voluntary.

In the process of selecting a jury in the present case sixty-five veniremen were questioned before the jury selection was completed. Fifteen of the prospective jurors were excused for cause based upon their responses to questions designed to ascertain the existence of conscientious scruples in opposition to the death penalty. Appellant asserts that eight veniremen were excluded in violation of the recent pronouncements in Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

■ As this court indicated in Segura v. Patterson, 402 F.2d 249 (10th Cir. 1968), Witherspoon requires that in order for jury selection to conform to the requirements of the Sixth and Fourteenth Amendments it must be shown that prospective jurors were not excluded merely because they indicated a hesitancy to impose the ultimate penalty. The exclusions in Witherspoon were based upon a state statute and involved the systematic exclusion of all who indicated the possession of conscientious scruples opposing capital punishment. That is not the situation here, instead we are faced with a case where, admittedly, the correct rule was applied as to some of the jurors while it is contended that others were erroneously excluded.

■ In a habeas corpus proceeding it is incumbent upon the federal courts to review the state proceedings and independently ascertain whether there exists factual and legal support for the constitutional issues presented.[8] In this connection due effect must be given, however, to the provision of the statutes with respect to the presumption of correctness of a determination of any pertinent factual issue made by a state court and the provision with respect to burden of proof as required by 28 U.S.C.A. § 2254, as amended by § 2254(d) of the Act of November 2, 1966, 80 Stat. 1105 (28 U.S.C.A. Supplementary Pamphlet

---

4. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

6. Davis v. State of North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895.

See generally, Annot., 16 L.Ed.2d 1294 (1967).

7. Leighton v. Cox, 365 F.2d 122 (10th Cir. 1966).

8. Dentis v. State of Oklahoma, 376 F.2d 590, 591 (10th Cir. 1967).

1967), in an evidentiary hearing in a federal court, had after the effective date of such amendment, on an application for a writ of habeas corpus in such federal court by a person in custody pursuant to the judgment of a state court, except in cases where such requirements have been removed in accordance with one or more of paragraphs numbered (1) to (8), inclusive, of § 2254(d). Accordingly, the one clear mandate in determining whether a state prisoner was tried by an impartial jury in the constitutional sense is that: "It [is] the duty of the Court of Appeals to independently evaluate the voir dire testimony of the * * * jurors." [9]

■ Without specifically delineating the questions and responses of all the "scrupled jurors", suffice it to say that thirteen of the fifteen ultimately excluded had indicated that they would be unable to impose the death penalty in any case. One of the excluded jurors, a Mr. Bradford, indicated that while he held no personal view in the matter, in deference to his wife and mother's pronounced distaste for capital punishment and in an effort to preserve domestic tranquility, he would be influenced by the attitude prevailing in his home. He indicated, however, that while he would be influenced he nevertheless would impose the penalty in a proper case. Consequently, the requisites of Witherspoon were not met and this juror not having been irrevocably committed to vote against capital punishment, he was im-

properly excused for cause. A second prospective juror, a Mr. McCalep, indicated that in due respect to the law he would have to impose the penalty in a proper case but he would not want to do so because he personally "did not go for it." Accordingly, it appears from the cold language of the transcript that neither Bradford nor McCalep would automatically vote against the death penalty.

The question thus presented is whether the exclusion of two prospective jurors whose testimony fails to satisfy Witherspoon is sufficient reason to hold that the defendant was denied an impartial jury and is therefore entitled to a reversal of the death sentence. In this regard, it should be emphasized that Witherspoon is distinguishable on its facts because there all of the exclusions were the result of the intentional application of an improper standard.

■ It was indicated in Witherspoon that the basis for the decision was the fact that there had been a systematic exclusion of all who opposed capital punishment. Having eliminated a substantial element of society the jury could not be said to express the conscience of the community.[10] "[W]hen it swept from the jury all who expressed conscientious or religious scruples against capital punishment and all who opposed it in principle, the State crossed the line of neutrality." [11] The crucial inquiry thus relates to whether it can be said that

9. Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961). In analyzing the voir dire testimony it becomes apparent that the Colorado trial court had the correct rule in mind. The case law of that jurisdiction has long recognized that in order to properly excuse a juror for cause his scruples must be such that he is unable to overcome them thereby indicating that he could not even consider imposing the death penalty. Stratton v. People, 5 Colo. 276 (1880); Demato v. People, 49 Colo. 147, 111 P. 703, 35 L.R.A.,N.S., 621 (1910). Nevertheless, as this court declared in Segura, supra, the relevant consideration is whether an examination of the voir dire

reveals that the proper test was in fact applied.

10. The Court relied upon Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); and Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). These cases all relate to the requirement that a jury to be impartial must be indifferent and "be impregnated by the environing atmosphere" which it cannot be if a substantial segment of the populace has been overlooked or eliminated.

11. 391 U.S. at 520, 88 S.Ct. at 1776.

the jury failed to reflect a cross-section of society thereby losing its neutrality as a result of the erroneous exclusion of two "scrupled jurors". In this context it is noteworthy that there were jurors evincing conscientious scruples who were not excused for cause. One of these, a Mrs. Dee, indicated a moral aversion to the death penalty but when asked whether she would impose the death penalty in a proper case she indicated: "I just don't know." The court refused to excuse her for cause. It would appear then that the jury did reflect the prevailing mores of society. It remained neutral in that there was not the systematic exclusion of any significant element of the community.

It cannot be said that the exclusion of two prospective jurors whose testimony did not indicate a pre-trial commitment to irrevocably vote against the death penalty resulted in a jury that failed to reflect "the evolving standards of decency that mark the progress of a maturing society." [12] This is because all other excluded jurors did acknowledge an unwaivering attitude in this regard, and further, there were prospective jurors who did indicate conscientious scruples but whom the court refused to excuse for cause. Hence, viewing the jury selection process in its entirety by weighing the responses of the excluded and non-excluded prospective jurors, it cannot be said that "the State crossed the line of neutrality" [13] and entered the domain of the impartial jury proscribed by the Sixth and Fourteenth Amendments.

Appellant's contentions relative to the single-verdict jury procedure and the cruel and unusual nature of the death penalty present the identical issues determined in Segura v. Patterson, 402 F.2d 249 (10th Cir. 1968). With but one exception, we view that decision as being dispositive of the remaining questions presented for our consideration.

The state trial court refused to grant a two-part trial on the issues of sanity and guilt as initially demanded by the accused. It is argued that because the operative state statute grants the trial court complete discretion in determining whether to require separate trials of these two issues, it was a violation of due process and equal protection to force appellant to present his affirmative defense of insanity while at the same time defending on the merits.

Reliance is placed on Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed. 2d 908 (1964), wherein the Court interpreted the Fourteenth Amendment as requiring a preliminary determination by the trial court on the question of voluntariness of confessions. However, the Supreme Court later indicated in Spencer v. Texas that Jackson is to be narrowly construed and must not be taken to indicate "a general distrust on the part of this Court of the ability of juries to approach their task responsibly and to sort out discrete issues given to them under proper instructions." [14] The Court ruled in Spencer that the jury could determine guilt after hearing evidence relating to other convictions that had been introduced in an attempt to invoke a recidivist statute. This was said to be consistent with the long-standing policy of allowing the States wide leeway in dividing responsibility in the administration of criminal justice. It follows that inasmuch as two-part jury trials "have never been compelled * * * as a matter of constitutional law," [15] we are not convinced that the Constitution requires this court to intervene in the division of responsibility and delegation of judicial tasks undertaken by the State of Colorado.

Affirmed.

---

12. 391 U.S. at 519, 88 S.Ct. at 1776.

13. 391 U.S. at 520, 88 S.Ct. at 1776.

14. Spencer v. State of Texas, 385 U.S. 554, 565, 87 S.Ct. 648, 654, 17 L.Ed.2d 606 (1967).

15. 385 U.S. at 568, 87 S.Ct. at 656.