195 S.E.2d 534 (1973)
283 N.C. 175
STATE of North Carolina
v.
Junior Lee WASHINGTON.
No. 46.
Supreme Court of North Carolina.
April 11, 1973.
*539 Atty. Gen. Robert Morgan, and Asst. Atty. Gen. Thomas B. Wood, for the State.
Barrington, Smith & Jones, P. A. by Carl A. Barrington, Jr., and Henry W. Witcover, Fayetteville, for defendant-appellant.
BOBBITT, Chief Justice.
Defendant was convicted at the 13 November 1972 Session of felonies committed on 2 August 1972. Both events occurred after the decision of the Supreme Court of the United States in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and before the decision of this Court in State v. Waddell, 282 N.C. 431, 194 S.E.2d 19 (1973).
With reference to the indictment for rape, the court instructed the jury: "You may find the defendant guilty of rape or not guilty," and "if you return a verdict of guilty of rape, the law provides that the defendant will be put to death in the gas chamber." The jury was not instructed in accordance with this portion of G.S. § 14-21: "Provided, if the jury shall so recommend at the time of rendering its verdict in open court, the punishment shall be imprisonment for life in the State's prison, and the court shall so instruct the jury." Presumably, it was Judge Brewer's opinion that Furman had invalidated the proviso in G.S. § 14-21 and that, absent the proviso, G.S. § 14-21 made the death sentence mandatory upon a conviction of rape. It was so held by this Court in Waddell in respect of rapes committed after the date (18 January 1973) of that decision but that "North Carolina's mandatory death sentence for rape . . . may not be constitutionally applied to any offense committed prior to the date" of the decision in Waddell. Hence, even if defendant has failed to show prejudicial error in respect of guilt, the death sentence in the rape case must be vacated and the cause remanded for proper judgment(s).
Assignments of Error Nos. 1, 2 and 3 may be considered together. Based thereon, defendant contends that (1) the constitutional right to due process was violated by the court's submission of the rape charge to the jury "as a capital issue"; (2) that the court erroneously failed to instruct the jury that life imprisonment was the maximum punishment for rape; and (3) that the court erroneously failed to instruct the jury that if they found defendant guilty of rape they could in their sole discretion return a verdict of "guilty, with the recommendation of life imprisonment."
In the light of Waddell, Judge Brewer should have submitted this case for jury determination solely in respect of whether defendant was guilty or not guilty of rape without referring to the punishment in the event of conviction; and, if convicted, defendant should have been sentenced to imprisonment for life. This is the appropriate procedure in respect of trials for the crimes of murder in the first degree, rape, burglary in the first degree and arson committed prior to 18 January *540 1973. However, the indicated errors were not prejudicial to the defendant. Certainly jurors would be more reluctant to return a verdict of guilty if advised that the punishment upon conviction would be death rather than life imprisonment. Moreover, we find no merit in the suggestion that the fact that defendant ostensibly was being tried for his life rather than for life imprisonment tended to emphasize or aggravate the seriousness of the crime. In either event, the seriousness of the crime depended upon the evidence as to what happened, not on whether the punishment therefor would be death or life imprisonment. Either of these punishments would suffice to indicate the seriousness of the crime of rape.
The jurors were selected under instructions that a verdict of guilty of rape would require the imposition of a death sentence. In State v. Williams, 275 N.C. 77, 165 S. E.2d 481 (1969), this Court rejected the idea that jurors are biased in favor of conviction simply because they do not have conscientious or religious scruples against capital punishment. Our decision in Williams was based largely on the decisions of the Supreme Court of the United States in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), and in our prior decision of State v. Peele, 274 N.C. 106, 113-114, 161 S.E.2d 568, 573-574 (1968), cert. den. 393 U.S. 1042, 89 S.Ct. 669, 21 L.Ed.2d 590 (1969).
Nothing in the record before us indicates that any member of the jury which tried defendant was biased in favor of conviction or otherwise prejudiced against defendant on account of his views on capital punishment or otherwise. Nor does it appear that the jury included any juror who was challenged by defendant.
In Assignment of Error No. 6 defendant asserts that the court erroneously admitted the portion of Mrs. Adams's testimony which relates to what defendant calls "an alleged second, uncharged, rape of the prosecuting witness by the defendant outside the car in the woods some time after the alleged first charged rape in the home." He bases this contention on the general rule that "in a prosecution for a particular crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." State v. Long, 280 N.C. 633, 641, 187 S.E.2d 47, 51 (1972). This general rule does not apply to the testimony challenged by defendant. The indictment charged that defendant raped Mrs. Adams on 2 August 1972. It was sufficient to support a conviction for rape committed in the home or in the woods or in the home and in the woods. The evidence is to the effect that from defendant's initial assault on Mrs. Adams in her home until he left her in the woods (clothed only in her panties), Mrs. Adams was defendant's captive. Defendant's actions constituted one continuous course of conduct. It makes no difference that the second act of rape took place in the woods rather than in Mrs. Adams's home.
In Assignment of Error No. 7 defendant asserts that the court erroneously admitted testimony of Mrs. Adams which included statements by defendant that up north "a white woman would let a black lay them" and that he had picked Mrs. Adams as his victim because she was "an uppity white chick." Mrs. Adams testified that the quoted statements were made by defendant after the second act of rape had been completed and while she and defendant were in the woods. Defendant asserts that this testimony "gratuitously injected into the proceeding tones of racial conflict"; that it was "highly racial and antiwhite in tone"; and that it "was irrelevant, immaterial and highly prejudicial to the defendant in its effect upon the jury." True, the statements made by defendant were "highly racial and anti-white in tone." But they were injected into the case gratuitously by defendant, not by Mrs. Adams. We hold that the evidence was competent *541 and properly admitted notwithstanding prejudice, if any, to the defendant. The testimony refers to statements made by defendant to a woman whom he had forcibly removed from her home and children, whom he had raped twice, and whose ultimate fate as his captive victim was unknown when the statements were made. Moreover, the quoted statements bear significantly upon the intent with which defendant entered the Adams home and upon his motivation in selecting an utter stranger as the object of his lust.
In Assignment of Error No. 13 defendant asserts that the court erred "in failing to grant the defendant's pre-trial motion for psychiatric examination on November 3, 1972."
Defendant was arrested 2 August 1972. He was indicted at the 14 August 1972 Session. We take judicial notice that a special (Criminal) session was held 2 October 1972. On 27 October 1972 a petition was filed which prayed that defendant be committed to the Dorothea Dix Hospital, Raleigh, North Carolina, for observation, evaluation and treatment as provided in G.S. § 122-91. Petition was signed and verified by Carl A. Barrington, Jr., defendant's retained private counsel. A hearing on the petition was conducted by Judge Brewer, the presiding Judge of the Twelfth Judicial District. By order dated 1 November 1972, Judge Brewer denied the petition. Apparently, no evidence was presented other than the verified petition. Judge Brewer based his order upon findings of fact that "the defendant ha[d] been confined in the Hoke County Jail since August 2nd, 1972"; that the cases were "scheduled for trial on Monday, November 13, 1972"; that "the information provided to the court is not sufficient grounds for a commitment to Dorothea Dix Hospital"; and that "no reasonable grounds for the defendant being committed to Dorothea Dix Hospital has been shown by competent evidence, affidavits or otherwise."
Although defendant assigns as error the denial of this petition, the record does not show that an exception thereto was noted. "The Rules of Practice (19 and 21) of both this Court and the Court of Appeals require any error asserted on appeal to be supported by an exception duly taken and shown in the record." State v. Jacobs, 278 N.C. 693, 696, 180 S. E.2d 832, 834 (1971). We note that G.S. § 122-91 provides that commitment to a State hospital for a period of not exceeding sixty days for observation and treatment may be entered. Defendant was not entitled to such order as a matter of right and has failed to show that the failure to grant his belated motion was an abuse of discretion. We note further that, upon arraignment at the 13 November 1972 Session, he pleaded not guilty, not insufficiency of mental capacity to plead to the indictment and conduct a rational defense. See State v. Propst, 274 N.C. 62, 68, 161 S.E.2d 560, 565 (1968).
Defendant's brief states no reason or argument and cites no authority in support of his Assignments of Error Nos. 4, 5, 8, 9, 10, 11 and 12. Hence, these assignments are deemed abandoned under Rule 28, Rules of Practice in the Supreme Court. State v. Strickland, 254 N.C. 658, 660, 119 S.E.2d 781, 782 (1961). Notwithstanding, defendant's counsel urges that we consider Assignments of Error Nos. 4 and 5. He asserts that these assignments have merit in the light of the decision of the Supreme Court of the United States in Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973), which was not available to him when he prepared his brief.
In Ham, under circumstances markedly different from those here under consideration, the Supreme Court of the United States held that refusal of the trial judge to make or permit any inquiry of the jurors as to racial bias denied defendant a fair trial in violation of the Due Process Clause of the Fourteenth Amendment. In *542 our opinion, the decision in Ham is not relevant to the present case. Notwithstanding, we have elected to consider defendant's Assignments of Error Nos. 4 and 5 as if they had been properly brought forward and presented in defendant's brief.
We first consider Assignment of Error No. 5 in which defendant asserts that "[t]he court erred in allowing the State to challenge certain jurors for cause." Each of these prospective jurors testified unequivocally on voir dire that, because of moral or religious scruples against capital punishment, he (she) could not return a verdict of guilty of rape, knowing the penalty therefor was death, even if the State proved to him (her) by the evidence beyond a reasonable doubt that the defendant was in fact guilty of rape. Even if a death sentence were mandatory upon a conviction of rape, the challenges of these prospective jurors for cause would have been properly allowed under Federal and State decisions. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); State v. Doss, 279 N.C. 413, 421, 183 S.E.2d 671, 676 (1971).
In Assignment of Error No. 4 defendant asserts that "[t]he court erred by its restrictions placed upon appellant in his voir dire of the prospective jury panel by its refusal to allow appellant to freely question the prospective jury members." This assignment is based on Exceptions Nos. 15-20, inclusive. The facts relating to these exceptions are set out below.
In conference at the bench, defendant's counsel stated to the court that he proposed to ask each prospective juror a series of questions with reference to circumstances in which he would vote to impose the death penalty, to wit:
"1. Would you consider evidence that some others convicted of rape had been executed and some had not?
"2. Would you consider evidence that there was or was not any rational basis for separating those who died from those who were allowed to live for a conviction of the same crime?
"3. Would you consider, if you had the opportunity, evidence about this defendant, either good or bad, other than that arising from the incident here?
"4. Would your decision to impose or not to impose the death penalty be influenced either way by evidence of how often members of the defendant's race, in this case that of a Negro, have been convicted of rape and have been executed, as compared to those convicted and executed in other racial and ethnic groups?"
The record shows that, upon objection by the State, the court disallowed these questions. They were "read into the record for the purpose of appeal only," but were not asked in the hearing of the jury. Defendant's Exception No. 15 is directed towards the court's ruling in respect of this series of questions.
Evidence that "some others convicted of rape had been executed and some had not," and evidence that "there was or was not any rational basis for separating those who died from those who were allowed to live for a conviction of the same crime," was not admissible. Hence, whether the prospective juror would consider such evidence was not relevant to his qualifications for service on the trial jury. This fact alone was sufficient ground for disallowing the first and second of the above questions.
While the fourth question does not use the phrase, "would you consider evidence," it presents a similar inquiry. It could not be answered by a prospective juror absent evidence of "how often members of the defendant's race . . . ha[d] been convicted of rape and ha[d] been executed, as compared to those convicted and executed in other racial and ethnic groups." Such evidence would have been inadmissible.
*543 We note that the first, second and fourth questions relate solely to factors bearing upon whether the penalty of death should be imposed upon defendant in the event of his conviction of rape. Since the death penalty is to be vacated, defendant was not prejudiced by the inability of his counsel to obtain answers to these questions.
The third question was properly disallowed because "evidence about the defendant, either good or bad, other than that arising from the incident here," might or might not be admissible for jury consideration. To illustrate: If defendant had testified, evidence relating to his general reputation would have been admissible with reference to his credibility; and, if defendant had offered evidence of his good character, such evidence would have been admissible in respect of credibility and as substantive evidence of guilt or innocence. State v. Wortham, 240 N.C. 132, 81 S.E.2d 254 (1954). Without knowledge of the nature of the evidence referred to in the question, and without knowledge of its admissibility, no prospective juror should have been required to answer a question of such scope and generality.
The record does not disclose how many prospective jurors were questioned before the jury selection procedure was completed. The exceptions on which defendant bases Assignment of Error No. 4 refer only to the prospective jurors referred to below.
We note first that Exceptions Nos. 16, 18 and 20 are directed to rulings in which the court sustained the State's objections to questions asked by defendant's counsel to prospective jurors Sanders, Goforth and Burr, respectively. The record fails to show what any of these prospective jurors would have said if permitted to answer. Such failure renders these rulings nonprejudicial. Eubanks v. Eubanks, 273 N.C. 189, 197, 159 S.E.2d 562, 568-569 (1968).
Exception No. 17 relates to the prospective juror identified only as Mrs. Lewis. Mrs. Lewis was asked: "Could you, under your religious and moral scruples, as they exist now, impose the death penalty for rape?" She answered: "I don't know." She was then asked: "In your opinion there is some distinction between that crime and other crimes?" The State's objection was sustained and defendant's Exception No. 17 was noted. The record does not show what Mrs. Lewis would have said if permitted to answer. Mrs. Lewis was then asked: "Could you, after hearing all of the evidence, the argument of counsel and charge of the court, and within the framework of your moral or religious scruples, impose or could you find the defendant guilty of rape, or a defendant guilty of rape, this defendant guilty of rape, knowing that it would mean mandatory imposition of the death penalty?" The solicitor's objection was overruled and Mrs. Lewis answered: "I do not, I just don't know."
Exception No. 19 relates to the prospective juror identified only as Mr. Smith. After Mr. Smith had testified that he had no moral or religious scruples with reference to the imposition of the death penalty under certain circumstances, he was asked this question: "Would you consider among those circumstances, the race of the defendant as compared to the race of the prosecuting witness?" The State's objection was overruled and Mr. Smith answered, "No, sir." Thereafter, the record shows the following:
"ATTORNEY BARRINGTON: Would you consider among those circumstances, the personal injury, if any, of a physical nature, done to the prosecuting witness?
"SOLICITOR THOMPSON: Objection
"JUROR: Yes, sir.
"SOLICITOR THOMPSON:to this line of questions.
*544 "COURT: Objection to the last question is sustained. I instruct the jury, if the question is asked and an objection is made, do not answer until such time as the court has an opportunity to rule on the objection.

"EXCEPTION NO. 19."
With reference to Exception No. 19, we first note that Mr. Smith's testimony was explicit and unequivocal to the effect that he would not consider "the race of the defendant as compared to the race of the prosecuting witness" as a circumstance in his determination of whether he would return a verdict that would result in the death penalty for rape. Before the solicitor had finished his objection to the question, Mr. Smith stated that "personal injury, if any, of a physical nature, done to the prosecuting witness," was one of the circumstances he would consider in determining whether he would return a verdict which would result in the death penalty for rape. Be that as it may, it is clear that all of these questions were directed to circumstances bearing upon whether the juror could or would return a verdict which would result in the imposition of the death penalty. We find nothing in the voir dire examination of these witnesses to support the contention that they were prejudiced racially against the defendant or that the fact of defendant's race was a factor for consideration in the return of the verdict.
Whether defendant undertook to challenge either Mrs. Lewis or Mr. Smith for cause or peremptorily does not appear. Indeed, the record is unclear as to whether either of them served on the jury which found defendant guilty of the crimes charged. "A party's right is not to select a juror prejudiced in his favor, but to reject one prejudiced against him." State v. Peele, 274 N.C. 106, 113, 161 S.E.2d 568, 573 (1968). We further note that the record does not show that defendant had exhausted his peremptory challenges.
In No. 72CR2182, in which defendant was convicted of rape, the trial was free of prejudicial error and the verdict of guilty of rape stands. However, for the reasons stated above, the judgment, insofar as it imposed the death penalty, is reversed. Accordingly, case No. 72CR2182 is remanded to the Superior Court of Hoke County with directions to proceed as follows:
1. The presiding judge of the Superior Court of Hoke County shall cause to be served on defendant, Junior Lee Washington, and on his counsel of record, notice to appear during a session of said superior court at a designated time not less than ten days from the date of the notice, at which time, in open court, the defendant, Junior Lee Washington, being present in person and being represented by his counsel, the presiding judge, based on the verdict of guilty of rape returned by the jury at the trial of this case at the 13 November 1972 Criminal Session, will pronounce judgment that the defendant, Junior Lee Washington, be imprisoned for life in the State's prison.
2. The presiding judge of the Superior Court of Hoke County will issue a writ of habeas corpus to the official having custody of the defendant, Junior Lee Washington, to produce him in open court at the time and for the purpose of being present when the judgment imposing life imprisonment is pronounced.
In No. 72CR2183 and in No. 72CR2212, the trials were free of prejudicial error and the verdicts and judgments are affirmed. However, these cases are remanded to the Superior Court of Hoke County with direction to proceed as follows: After the sentence of life imprisonment has been pronounced in No. 72CR2182 as set out above, the judgment in No. 72CR2183 is to be modified so as to provide that the term of imprisonment imposed therein commence at the expiration of the sentence of life imprisonment imposed in No. 72CR2182, and the judgment in No. 72CR2212 is to be modified so as to provide *545 that the term of imprisonment imposed therein commence at the expiration of the sentence imposed in No. 72CR2183.
Death sentence in No. 72CR2182 reversed and cause remanded with instructions.