STATE OF NORTH CAROLINA v. ERNEST FRANZILLE
ARMSTRONG

No. 10

(Filed 14 April 1975)

1. Rape § 1— definition — fear replacing violence

Rape is the carnal knowledge of a female person by force and against her will, but fear, fright or coercion may take the place of actual physical force.

2. Rape § 1— consent as defense .—..consent induced by fear or violence — no legal consent

Although consent by the female is a complete defense to a charge of rape, there is no legal consent when it is induced by fear or violence.

3. Rape § 5— no evidence of consent — sufficiency of evidence for submission to jury

Evidence was sufficient to support defendant's conviction for rape where it tended to show that the 31-year-old defendant, who weighed 236 pounds, held his 69-year-old victim, who weighed 110 pounds, around the neck, he held his hand over her mouth, he dragged her into the bedroom of her home and raped her, the victim was alone in her home, was very frightened, was unable to call for help, resisted to the best of her ability, and at no time consented to defendant's advances.

4. Criminal Law §§ 127, 157— parts of record proper — no error on face — motion in arrest of judgment denied

The record proper in criminal cases ordinarily consists of (1) the organization of the court, (2) the charge, i.e., the information, warrant or indictment, (3) the arraignment and plea, (4) the verdict, and (5) the judgment; the face of the record proper in this case revealed no fatal defect, and denial of defendant's motion in arrest of judgment was proper.

5. Constitutional Law § 36; Rape § 7— imposition of death penalty — constitutionality

Imposition of the death penalty in this rape case was legally authorized and did not constitute cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments to the U. S. Constitution.

6. Rape § 6— evidence of rape only — submission of lesser included offenses — error favorable to defendant

Where all of the evidence revealed a completed act of sexual intercourse and the only dispute between the State and the defendant was whether the act was accomplished by consent or by force, submission of the lesser included offenses of assault with intent to commit rape and assault on a female was error favorable to the defendant.

Chief Justice SHARP and Justices COPELAND and EXUM dissenting as to death sentence.

State v. Armstrong

DEFENDANT appeals from judgment of *Hobgood, J.,* 18 March 1974 Regular Criminal Session, HARNETT Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the rape of Roena Massey on 11 November 1973 in Harnett County.

The State offered evidence tending to show that Roena Massey is the aunt of Sherill Donald Stewart. At approximately 5 p.m. on 10 November 1973 the defendant Ernest Franzille Armstrong and Sherill Donald Stewart were together in the town of Benson drinking scotch and beer. About 7:30 p.m. they went to the home of Roena Massey in the nearby town of Coats where they remained for approximately one hour. Roena Massey did not know defendant and had never seen him before. Both men stated that Stewart's wife and defendant's wife were first cousins. They left about 8:30 p.m., and Roena Massey went to bed around 9:30 p.m.

The two men toured several night spots in Harnett County and separated after returning to Benson. Defendant returned to the home of Roena Massey about midnight, and she was awakened when he rang the doorbell. She arose, turned on the light, unlocked the wooden door and then unlocked the storm door. Defendant stepped inside. Mrs. Massey said she thought it was her granddaughter and opened the door without paying much attention.

Defendant followed Mrs. Massey into the den. She asked him what he was doing there, and he replied: "Pem Pam [Sherill Donald Stewart] said send him one of your stockings." Mrs. Massey informed defendant she would do nothing of the sort. Defendant was staring at her and she commenced to back away while defendant was advancing upon her. Defendant said, "I tried to talk nice to you and you wouldn't listen but I bet you will." He threw his arms around her neck, placed his hand over her mouth and said, "Do like I tell you and I won't hurt you."

Defendant gagged Mrs. Massey with her panty hose, forced her into the bedroom and raped her. Defendant thereupon left after exacting a promise from her that she would not "put the law on him." Mrs. Massey then ran to the nearby home of her granddaughter, told her what had happened, and she called the police.

Mrs. Massey was examined by Dr. Doffermyre at 11 a.m. on 11 November 1973. She gave the doctor a history of having been raped the night before by a colored man whose name she did not know. The examination revealed the presence of sperm in all microscopic fields, and Dr. Doffermyre stated that unquestionably the patient had had intercourse. The bottom wall of the vaginal vault revealed a split in the mucous membrane one and one-half inches long, and the injury appeared to be recent.

The State's evidence further shows that Mrs. Massey was sixty-nine years of age and weighed approximately 110 pounds. She had lived in and around the town of Coats for approximately twenty years and had no criminal record. The police chief testified that her general reputation in the community was very good.

Defendant, testifying in his own behalf, stated that he and Stewart were drinking, and while they were at Mrs. Massey's home he told her his name was "Cherry" and she asked him to return later. In response to that invitation he returned about midnight and was admitted to her home. They engaged in sexual relations by mutual consent. Thereafter they talked for a while and she accompanied him to the front door when he departed.

On cross-examination defendant stated that he was thirty-one years old and weighed 236 pounds; that he had been convicted of destroying State property in Benton, Louisiana, and of other crimes in El Paso, Texas, Montgomery, Alabama, Jacksonville, Florida, Texarkana, Arkansas, and New Orleans, Louisiana.

Sherill Donald Stewart testified that he and defendant went to the home of Roena Massey about 7:30 p.m. on 10 November 1973 and stayed about forty-five minutes; that he left the room on one occasion while they were there and, of course, heard no conversation between defendant and Mrs. Massey during his absence. He stated that defendant said nothing about returning to Mrs. Massey's home but said he was going home when they parted about 9:30 p.m.

The trial court instructed the jury to return one of the following verdicts: Guilty of rape, guilty of assault with intent to commit rape, guilty of assault on a female, or not guilty. The jury convicted defendant of rape, and he was sentenced to

death. From that judgment he appeals to this Court assigning errors noted in the opinion.

*Robert Morgan, Attorney General, and William F. O'Connell, Assistant Attorney General, for the State of North Carolina.*

*Wiley F. Bowen, attorney for defendant appellant.*

HUSKINS, Justice.

The defense in this case is based on consent. Defendant contends the evidence relied upon by the State to show resistance on the part of Mrs. Massey is inconclusive and the trial judge failed to declare and explain the law, as required by G.S. 1-180, relative to Mrs. Massey's conclusion that resistance on her part would be useless. This constitutes the basis for defendant's first assignment of error.

The court charged on this point as follows:

"Now, I charge you for you to find the defendant guilty of rape the State must prove three things beyond a reasonable doubt:

First, that the defendant had sexual intercourse with Roena Massey.

Second: That the defendant used or threatened to use force sufficient to overcome any resistance she might make. Now, in reference to force the court instructs you that force necessary to constitute rape need not be actual physical force. Fear, fright or coercion may take the place of force. While consent by the female, Roena Massey, is a complete defense for the defendant, consent which is induced by fear of violence is void and is not legal consent.

Consent of the woman for fear of personal violence is void. Even though a man lays no hand on a woman yet if by an array of physical force he so overpowers her mind that she dares not resist or she ceases resistance through fear of great harm, the consummation of the unlawful intercourse by the man is as a matter of law rape.

The third point that must be proven to you by the evidence and beyond a reasonable doubt is that Roena Massey did not consent and it was against her will."

[1, 2] The quoted portion of the charge clearly enunciates the law of this State. Rape is the carnal knowledge of a female person by force and against her will. *State v. Flippin,* 280 N.C. 682, 186 S.E. 2d 917 (1972). Fear, fright or coercion may take the place of actual physical force. *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). Although consent by the female is a complete defense to a charge of rape, there is no legal consent when it is induced by fear of violence. *State v. Carter,* 265 N.C. 626, 144 S.E. 2d 826 (1965).

Mrs. Massey testified, among other things, that she was terribly frightened; that "he had done throwed his arm around my neck like that and was choking me (indicating) and hand come over my mouth. . . . I sure was frightened. . . . He was holding me by my neck. . . . I began to give up because I didn't know where he was going to kill me or what he was going to do to me and I was there alone in that house by myself. . . . I couldn't get away from him because he had me around the neck like this choking me and his hand over my mouth there weren't no way for me to. . . . He just kept pulling on me and seesawing me and zigzagging me until he got me in my bedroom. . . . I ain't never been no scareder since I have been born in the world than I was then. . . . Weren't no way in this world for me to yell for help no way."

[3] There is nothing in the testimony of Mrs. Massey to support the suggestion that she consented. The only reasonable inference to be drawn from her testimony is that she did not consent and that she resisted to the best of her ability. Her struggles ceased when she realized she was helpless to protect herself and was in fear of death or serious bodily harm at the hands of a thirty-one year old man weighing 236 pounds. Hence, in accordance with well established legal principles, there was ample evidence to support defendant's conviction for rape. *State v. Henderson,* 285 N.C. 1, 203 S.E. 2d 10 (1974); *State v. Primes,* 275 N.C. 61, 165 S.E. 2d 225 (1969). Defendant's first assignment of error is overruled.

Failure of the court to set aside the verdict and arrest judgment constitutes defendant's second assignment of error. We find no merit in this assignment for the reasons stated below.

A motion to set aside the verdict as being contrary to the weight of the evidence is addressed to the discretion of the trial

judge. *State v. Arnold,* 284 N.C. 41, 199 S.E. 2d 423 (1973);
*State v. Henderson,* 276 N.C. 430, 173 S.E. 2d 291 (1970). The
evidence amply supports the verdict. No abuse of discretion is
shown.

A motion in arrest of judgment is made after verdict, de-
signed to prevent entry of judgment, and is based upon the
insufficiency of the indictment or some other fatal defect ap-
pearing on the face of the record. *State v. McCollum,* 216 N.C.
737, 6 S.E. 2d 503 (1940). "In a criminal prosecution, however,
judgment may be arrested when—and only when—some fatal
error or defect appears on the face of the record proper." *State
v. Kirby,* 276 N.C. 123, 171 S.E. 2d 416 (1970); *State v. Hig-
gins,* 266 N.C. 589, 146 S.E. 2d 681 (1966).

[4] The record proper in criminal cases ordinarily consists
of (1) the organization of the court, (2) the charge, *i.e.,* the
information, warrant or indictment, (3) the arraignment and
plea, (4) the verdict, and (5) the judgment. *State v. McClain,*
282 N.C. 357, 193 S.E. 2d 108 (1972); *State v. Tinsley,* 279
N.C. 482, 183 S.E. 2d 669 (1971). Here, the face of the record
proper reveals no fatal defect, and denial of defendant's motion
in arrest of judgment was proper. Defendant's second assign-
ment of error is overruled.

[5] Finally, defendant contends that imposition of the death
penalty is legally unauthorized and constitutes cruel and unusual
punishment prohibited by the Eighth and Fourteenth Amend-
ments to the Constitution of the United States. This contention
has heretofore been considered and determined to be without
merit in various cases, including *State v. Henderson,* 285 N.C.
1, 203 S.E. 2d 10 (1974); *State v. Dillard,* 285 N.C. 72, 203
S.E. 2d 6 (1974); *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750
(1974); *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721 (1974);
*State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19 (1973). Defend-
ant's third assignment based on this contention is overruled.

[6] It should be noted that all of the evidence in this case re-
veals a completed act of sexual intercourse. The only dispute
between the State and the defendant is whether the act was
accomplished by consent or by force. Under those circumstances
there was no necessity to submit the lesser included offenses of
assault with intent to commit rape and assault on a female.
Lesser included offenses must be submitted only when there is
evidence to support them. *State v. Watson,* 283 N.C. 383, 196

S.E. 2d 212 (1973); *State v. Bryant,* 280 N.C. 551, 187 S.E. 2d 111 (1972). Submission of the lesser included offenses, however, was error favorable to the defendant and affords him no grounds for relief.

We have carefully examined the entire record and conclude that defendant received a fair trial, free from prejudicial error. The trial, verdict and judgment must therefore be upheld.

No error.

Chief Justice SHARP dissents as to the death sentence and votes to remand for imposition of a sentence of life imprisonment for the reasons stated in her dissenting opinion in *State v. Williams,* 286 N.C. 422, 434, 212 S.E. 2d 113, 123 (1975).

Justice COPELAND dissents as to death sentence and votes to remand for imposition of a sentence of life imprisonment for the reasons stated in his dissenting opinion in *State v. Williams,* 286 N.C. at 437, 212 S.E. 2d 113 at 122 (1975).

Justice EXUM dissents from that portion of the majority opinion which affirms the death sentence and votes to remand this case in order that a sentence of life imprisonment can be imposed for the reasons stated in his dissenting opinion in *State v. Williams,* 286 N.C. 422, 212 S.E. 2d 113 (1975).