STATE OF NORTH CAROLINA v. LARRY BERNARD

No. 5

(Filed 7 October 1975)

1. **Jury § 7— jurors opposed to capital punishment — equivocal answers — excusal for cause**

   Two prospective jurors were properly excused for cause where their answers to questions on *voir dire* concerning their attitudes toward the death penalty, although equivocal, show when considered contextually that regardless of the evidence neither juror would have voted to convict if conviction meant imposition of the death penalty.

2. **Jury § 7— general reservations about death penalty — excusal for cause — harmless error**

   The trial court erred in excusing for cause a prospective juror who stated only that he did not believe in the death penalty and another prospective juror who said he "thought" he would automatically vote against the imposition of the death penalty regardless of the evidence; however, the exclusion of such jurors did not result in error so prejudicial as to warrant a new trial since (1) the sole function of the jury was to decide guilt or innocence and not punishment, (2) there was no systematic exclusion of all veniremen who opposed capital punishment by the intentional application of an improper standard, and (3) defendant did not exhaust his peremptory challenges.

3. **Criminal Law §§ 120, 138— death penalty upon verdict of guilty of rape — refusal to give instruction — harmless error**

   The trial court in a rape case erred in the denial of defendant's written request for an instruction that the death penalty would be imposed upon the return of a verdict of guilty of rape since G.S. 15-176.4 makes it mandatory that the trial judge give the instruction upon the request of either party; however, such error was not prejudicial where nothing in the record indicates the jury was confused or uncertain as to the punishment which would result upon the return of a verdict of guilty of the crime of rape, each impaneled juror was examined at length as to his attitude toward the death penalty, and the record reveals that each juror knew that the death penalty would be imposed if a verdict of guilty was returned on the charge of rape.

4. **Constitutional Law § 36; Rape § 7— death penalty for rape — constitutionality**

   Imposition of the death penalty for the crime of rape did not constitute cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments of the U. S. Constitution and by Article I, §§ 19 and 24 of the N. C. Constitution.

   Chief Justice SHARP and Justices COPELAND and EXUM dissent as to death sentence.

State v. Bernard

APPEAL by defendant from *Tillery, J.,* 30 September 1974 Session of NEW HANOVER Superior Court.

Defendant was tried upon bills of indictment charging him with rape, kidnapping, armed robbery and felonious automobile larceny. The charges were consolidated for trial and defendant entered a plea of not guilty to each of the charges.

The State's evidence tended to show that on 30 November 1973 at about 9:30 p.m., Mrs. Alice Faye Lee was at the Woolco parking lot in New Hanover County and as she entered her husband's automobile, defendant forced his way into the car and by use of a knife held to her throat obtained the automobile keys, took money from her and then drove to a wooded area of the county where against her will and by threat to kill with the knife he had sexual relations with Mrs. Lee. He then forced her to get out of the car and tied her to a nearby fence post. Defendant left in Mr. Lee's automobile and Mrs. Lee thereafter freed herself and went to a trailer where she called the police. Defendant was arrested a short time later in Wilmington, North Carolina, as he emerged from Mr. Lee's automobile. On the same night, Mrs. Lee identified defendant in a six-man lineup. At the time of identification, defendant was wearing Mr. Lee's ring which at the time of the kidnapping was on the directional signal of the Lee automobile. Defendant made a full confessison concerning all of the charged crimes and at trial these statements were admitted into evidence after the trial judge conducted a *voir dire* hearing and found that the statements were made freely, understandingly and voluntarily. At trial, Mrs. Lee made a positive in-court identification of defendant. There was medical evidence showing that Mrs. Lee was examined on the night of 30 November 1973 and that live male sperm was found in her vagina. The State offered other cumulative and corroborative evidence. Defendant offered no evidence.

The jury returned verdicts of guilty on all charges and the trial judge imposed the death penalty in the rape case and imposed consecutive sentences on the other jury verdicts. Defendant appealed from all judgments entered.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General E. M. Speas, Jr., and Associate Attorney Joan H. Byers, for the State.*

*Mathias P. Hunoval for defendant appellant.*

State v. Bernard

BRANCH, Justice.

Defendant's principal assignment of error is that his constitutional rights were violated by the exclusion of jurors who voiced only general objections to the death penalty. He relies upon the rule set forth in *Witherspoon v. Illinois*, 391 U.S. 510, 20 L.Ed. 2d 776, 88 S.Ct. 1770. In *Witherspoon*, the jury was entrusted with two responsibilities: (1) to determine whether defendant was guilty or innocent and (2) if found guilty, to determine whether his sentence would be imprisonment or death. The prosecution eliminated nearly one-half of the venire by successfully challenging any venireman who expressed any qualms about capital punishment. The jury found defendant guilty and fixed his penalty at death. Thereafter the Court dismissed his petition for *habeas corpus* and the Supreme Court of Illinois affirmed. The Supreme Court allowed *certiorari* and in reversing the Supreme Court of Illinois held that a sentence of death could not be carried out if the jury which imposed or recommended it was chosen by excluding veniremen for cause who simply voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction. However, the Court made it clear that the prosecution *could* challenge jurors who state that their feelings concerning capital punishment would prevent them from making an impartial decision as to defendant's guilt and that the prosecution could challenge for cause any venireman who said that he could never vote to impose the death penalty or would refuse to consider its imposition in the case before him.

We consider briefly the *voir dire* of the prospective jurors whose exclusion from the jury panel was challenged by the defendant.

Prospective juror Corbett stated that she would automatically vote against the imposition of the death penalty regardless of the evidence. Prospective juror Dobson stated that he would vote against the imposition of capital punishment without regard to the evidence. It seems clear that the statements of both these jurors disclose that neither could make an impartial decision as to defendant's guilt and that they would refuse to consider the death penalty regardless of what the evidence might disclose. These jurors were properly excluded for cause.

[1]   The concluding portion of the examination of prospective juror Durant was as follows:

> Q. MRS. DURANT, DO YOU HAVE ANY RELIGIOUS OR MORAL SCRUPLES OR BELIEFS AGAINST CAPITAL PUNISHMENT?
>
> A. I DON'T BELIEVE IN IT.
>
> Q. WHAT YOU ARE TELLING ME IS THAT UNDER NO CIRCUMSTANCES WOULD YOU VOTE TO IMPOSE CAPITAL PUNISHMENT REGARDLESS OF WHAT THE EVIDENCE IS?
>
> A. No.
>
> MR. COBB: I CHALLENGE HER FOR CAUSE.
>
> THE COURT: THANK YOU, MRS. DURANT, I'LL LET YOU STEP ASIDE FOR THAT CASE.

The pertinent portion of the *voir dire* examination of prospective juror Smith disclosed the following:

> Q. ARE YOU TELLING ME THAT YOU WOULD OR WOULD NOT VOTE TO RETURN A VERDICT OF GUILTY IN A CAPITAL CASE IF YOU ARE SATISFIED BEYOND A .REASONABLE DOUBT HE WAS GUILTY? WOULD YOU VOTE TO RETURN A VERDICT OF GUILTY WHICH WOULD MEAN TO GIVE A PERSON THE DEATH SENTENCE OR NOT?
>
> A. No.
>
> Q. SO REGARDLESS OF THE EVIDENCE YOU WOULD NOT VOTE TO CONVICT SOMEBODY IF IT WOULD MEAN THE IMPOSITION OF A DEATH SENTENCE?
>
> A. No.

The difficulty in deciding whether jurors Durant and Smith were improperly excluded from the jury panel lies in interpreting the record. The jurors' answers on *voir dire* seem equivocal when only isolated portions of the record are examined; however, when considered contextually, the responses to the rather awkwardly phrased questions leave little doubt that the prospective jurors Durant and Smith expressed attitudes toward the death penalty which required their exclusion from the jury panel. The judge clearly interpreted the answers to mean that

---

State v. Bernard

---

regardless of the evidence neither juror would vote to convict if conviction meant imposition of the death penalty. More importantly, defense counsel must have interpreted the answers in the same manner since at trial he sought no clarification and interposed no objection to the trial judge's action in excusing the prospective jurors. We, therefore, conclude that prospective jurors Smith and Durant were properly excluded for cause.

[2]　We quote a portion of the *voir dire* examination of prospective juror Gantt:

Q. DO YOU HAVE ANY RELIGIOUS OR MORAL SCRUPLES OR BELIEFS AGAINST CAPITAL PUNISHMENT?

A. WELL, I DON'T BELIEVE IN THE DEATH PENALTY, NO.

Q. SIR?

A. I DON'T BELIEVE IN THE DEATH PENALTY, NO.

Q. IT WOULD BE IMPOSSIBLE REGARDLESS OF THE EVIDENCE FOR US TO PUT ENOUGH EVIDENCE IN THERE TO SATISFY YOU TO BRING IN A VERDICT OF GUILTY IF IT MEANT THE IMPOSITION OF THE DEATH PENALTY, IS THAT RIGHT?

An unequivocal answer to the final question asked by the solicitor would have determined prospective juror Gantt's competence to serve on the panel so far as the *Witherspoon* rule might apply. However, this record discloses no answer to the question and we are of the opinion that this juror was erroneously excused for cause. The trial judge also erred by excusing the prospective juror Howell who said that he *thought* he would automatically vote against the imposition of the death penalty regardless of the evidence.

We are thus brought to the question of whether the exclusion of prospective jurors Gantt and Howell for cause because of their attitude toward the death penalty resulted in error so prejudicial as to warrant a new trial. We considered a similar question in the recent case of *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125. There after finding that a challenge for cause was erroneously allowed when the prospective juror only expressed general reservations concerning the death penalty, this Court stated:

Even so, when the mandates of *Witherspoon* are followed in the selection of other jurors, as here, "the errone-

ous allowance of an improper challenge for cause does not entitle the adverse party to a new trial, so long as only those who are competent and qualified to serve are actually empaneled upon the jury which tried his case." *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969), *rev'd on other grounds,* 403 U.S. 948, 29 L.Ed. 2d 859, 91 S.Ct. 2283 (1971). A defendant has no "vested right to a particular juror." *State v. Vann,* 162 N.C. 534, 77 S.E. 295 (1913). We adhere to this view. *Accord, Bell v. Patterson,* 402 F. 2d 394 (10th Cir. 1968), *cert. denied,* 403 U.S. 955, 29 L.Ed. 2d 865, 91 S.Ct. 2279 (1971) ; *State v. Conyers,* 58 N.J. 123, 275 A. 2d 721 (1971). Unpersuasive decisions contra include *Marion v. Beto,* 434 F. 2d 29 (5th Cir. 1970), *cert. denied,* 402 U.S. 906, 28 L.Ed. 2d 646, 91 S.Ct. 1372 (1971) ; *Woodards v. Cardwell,* 430 F. 2d 978 (6th Cir. 1970) ; *People v. Washington,* 71 Cal. 2d 1170, 459 P. 2d 259, 81 Cal. Rptr. 5 (1969). When no systematic exclusion is shown, defendant's right is only to *reject a juror prejudiced against him;* he has no right to *select one prejudiced in his favor. State v. Washington,* 283 N.C. 175, 195 S.E. 2d 534 (1973), *cert. denied,* 414 U.S. 1132, 38 L.Ed. 2d 757, 94 S.Ct. 873 (1974) ; *State v. Peele,* 274 N.C. 106, 161 S.E. 2d 568 (1968), *cert. denied,* 393 U.S. 1042, 21 L.Ed. 2d 590, 89 S.Ct. 669 (1969) ; *State v. Vann, supra.* Thus the improper exclusion of Mrs. Lewis was not prejudicial and does not necessitate a new trial. Defendant's first assignment is overruled.

Initially it must be borne in mind that the case before us differs from *Witherspoon* in that the *Witherspoon* jury was called upon to decide both the issue of the defendant's guilt and whether if guilty the punishment would be death or imprisonment. Here the sole function of the jury was to decide whether defendant was guilty or innocent. A more compelling and convincing distinction between *Witherspoon* and the case before us for decision lies in the fact that in *Witherspoon* there was a systematic exclusion of all veniremen who opposed capital punishment by the intentional application of an improper standard. Such action does not appear in the record of the case before us. Finally, we note that defendant did not exhaust his peremptory challenges; nor did the State exhaust the peremptory challenges allotted to it. This is strong evidence that no juror was impaneled who was prejudiced against defendant. In fact, this record does not disclose a vestige of evidence that a juror was impaneled who was

not qualified and competent to serve. For the reasons stated, this assignment of error is overruled.

We again note that many of the problems growing out of prospective jurors' attitudes toward the death penalty could be avoided if district attorneys would prepare and use in the *voir dire* examination of prospective jurors questions framed according to the clear language of *Witherspoon.*

[3] Defendant next assigns as error the denial of his written request for an instruction that "should you [the jury] return a verdict of guilty to the alleged crime of rape, the death penalty will be imposed by this Court." He argues that this ruling denied him his constitutional right of due process as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States and by Article I, §§ 19, 23 and 36 of the North Carolina Constitution.

G.S. 15-176.4, *effective 1 July 1974,* provides:

Instruction to jury on consequences of guilty verdict.— When a defendant is indicted for a crime for which the penalty is a sentence of death, the court, upon request by either party, shall instruct the jury that the death penalty will be imposed upon the return of a verdict of guilty of that crime.

Defendant's request for this written instruction was filed on 2 October 1974.

In *State v. Britt,* 285 N.C. 256, 204 S.E. 2d 817, *filed 15 May 1974,* we stated:

. . . [I]f the trial judge observes that the jury is confused or uncertain as to whether one of its permissive verdicts would result in a mandatory death sentence, in our opinion, sufficient compelling reason exists to justify his informing the jury of the consequence of their possible verdicts.

This language indicates that the instruction was not necessary if the jury knew that one of its verdicts would result in a mandatory death sentence.

G.S. 15-176.4 makes it *mandatory* that the trial judge give the instruction upon the request of either party. It is, therefore, obvious that the trial judge erred when he refused to give the

instruction mandated by the statute. It is equally obvious that there could be no prejudice to the defendant if the jury *knew* the sentence of death would be imposed upon the return of a verdict of guilty of the crime of rape. Nothing in this record indicates that the jury was confused or uncertain as to the punishment which would result upon the return of a verdict of guilty of the crime of rape. Each impaneled juror was examined at length as to his or her attitude toward the death penalty. Unquestionably this record reveals that each juror knew that the death penalty would be imposed if a verdict of guilty was returned on the charge of rape. Thus there was no prejudicial error in the trial judge's failure to give the requested instruction.

[4]　Finally defendant assigns as error the imposition of the death penalty, contending it to be cruel and unusual punishment prohibited by the Eighth and Fourteenth Amendments of the Constitution of the United States and by Article I, §§ 19 and 24 of the North Carolina Constitution. This contention and the supporting arguments here made have heretofore been considered and consistently rejected by this Court. *State v. Vick,* 287 N.C. 37, 213 S.E. 2d 335; *State v. Armstrong,* 287 N.C. 60, 212 S.E. 2d 894; *State v. Vinson,* 287 N.C. 326, 215 S.E. 2d 60; *State v. Dillard,* 285 N.C. 72, 203 S.E. 2d 6; *State v. Noell,* 284 N.C. 670, 202 S.E. 2d 750; *State v. Jarrette,* 284 N.C. 625, 202 S.E. 2d 721; *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19.

This assignment of error is overruled.

Since the death penalty was imposed, we have carefully examined this entire record and find no error warranting a new trial. Such examination discloses that defendant was accorded a fair trial and that the jury's verdict was based on overwhelming evidence including his own voluntary confession and irrefutable evidence identifying him as the person who committed the crimes charged.

No error.

Chief Justice SHARP dissenting as to the death sentence:

The rape for which defendant has been convicted occurred on 30 November 1973, a date between 18 January 1973, the day of the decision in *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d

19, and 8 April 1974, the day on which the General Assembly rewrote G.S. 14-21 by the enactment of Chapter 1201 of the Session Laws of 1973. For the reasons stated in the dissenting opinion in *State v. Jarrette,* 284 N.C. 625, 666 *et seq.,* 202 S.E. 2d 721, 747 *et seq.* (1974), I dissent as to the death sentence imposed upon defendant by the court below and vote to remand for the imposition of a sentence of life imprisonment.

Justice COPELAND dissents as to death sentence and votes to remand for imposition of a sentence of life imprisonment for the reasons stated in his dissenting opinion in *State v. Williams,* 286 N.C. 422 at 437, 212 S.E. 2d 113, 122 (1975).

Justice EXUM dissents from that portion of the majority opinion which affirms the death sentence and votes to remand this case in order that a sentence of life imprisonment can be imposed for the reasons stated in his dissenting opinion in *State v. Williams,* 286 N.C. 422, 439, 212 S.E. 2d 113, 121 (1975), other than those relating to the effect of Section 8 of Chapter 1201 of the 1973 Session Laws.